## Case No. 6,950.

### HUSSEY v. WHITELY et al.

[2 Fish. Pat. Cas. 120;[1] 1 Bond, 407.]

Circuit Court, S. D. Ohio. Dec., 1860.

PATENTS—ASSIGNMENT—LICENSE—DUTY OF DISTRICT JUDGE.

1. H. assigned to M. A. & Co. all his right and interest under his patent in twenty-three counties in Ohio, including that in which the defendants' manufactory was carried on. M. A. & Co. were to pay ten dollars for each machine made and sold by them, while H. reserved the right of sending machines of his own manufacture into the territory named in the contract. *Held:* That this paper was not an assignment of the interest of H. in the patent within the territory named, but a mere license.

---

[1] [Reported by Samuel S. Fisher, Esq.; reprinted in 1 Bond, 407: and here republished by permission.]

2. H., by virtue of the rights reserved to him, must be viewed as a "party aggrieved" in the words of section 17 of the act of July 4, 1836 [5 Stat. 124], and he had an undoubted right to proceed in equity, for the protection of his rights, without joining M. A. & Co. as parties complainant.

[Cited in Edison Electric Light Co. v. Electric Manuf'g Co., 57 Fed. 619.]

3. By law, a district judge is associated with a justice of the supreme court of the United States in holding a circuit court, and may hold that court alone, in the absence of the superior judge; but it would be clearly wrong in a district judge, as a judge of the circuit court, in any case, to review or set aside the action of the superior judge.

4. But, if the aspect of the case, as presented to the district judge, is substantially changed by new evidence, which, it may be fairly presumed, if brought to the notice of the presiding judge, would have led to different action, it would be the duty of the former to consider such proof and act in accordance with it.

[Cited in Preston v. Walsh, 10 Fed. 317; Norton v. Eagle Automatic Can Co., 61 Fed. 295.]

5. Presumptions of the novelty of a patented invention may arise from some or all of the following grounds: 1. The oath of the patentee that he was the first and original inventor. 2. The action of the patent office in granting the patent after full examination. 3. Undisturbed enjoyment of all the benefits of the exclusive rights granted by the patent. 4. Direct adjudications, either at law or in equity, establishing the validity of the patent. 5. Injunctions granted to restrain infringement of the patent.

[Cited in Johnson v. McCabe, 37 Ind. 539.]

6. The authorities are numerous to support the position, that when such grounds of presumption exist in favor of the novelty of a patented invention, courts will not refuse an injunction, or, if granted, will not dissolve it unless the patent is impeached by the most conclusive evidence.

7. If the defendant, upon a motion to dissolve an injunction, so clearly and conclusively impeaches the novelty of the invention of complainant as to leave no doubt on that point, it might be the duty of the court, against all the presumptions in the patentee's favor, to release the defendant from the operation of the injunction.

8. The fact that a defendant is suffering serious injury from the stoppage of his manufactory, by an injunction, furnishes no reason for a departure from the well-settled rules of chancery practice in patent cases; especially if there be no pretense that he has proceeded in ignorance of the patentee's invention.

In equity. This was a motion to dissolve a provisional injunction, granted by Mr. Justice McLean, while sitting at chambers in Cleveland, to restrain defendants [William N. Whitely, Jerome Fassler, and Oliver S. Kelly] from infringing letters patent [No. 5,227] for an "improvement in reaping machines" issued to Obed Hussey, August 7, 1847, and reissued April 14, 1857, in three divisions [Nos. 449, 450, and 451]. The claims of the original and reissued patents, with a sketch of the invention, will be found in the report of Hussey v. Bradley [Case No. 6,946. See, also, Id. 6,948.] The motion to dissolve was predicated mainly upon a license from the complainant [Eunice B. Hussey, administratrix of Obed Hussey, deceased] to Minturn, Allen & Co. to use the invention within twenty-three counties of Ohio, including that in which the manufactory of the defendants was located. It was insisted that this paper constituted an exclusive grant, and that suit must be brought in the name of the grantees, or that, in any event, they must be joined as parties complainant.

N. C. McLean, P. H. Watson, and E. M Stanton, for complainant.

G. M. Lee and S. S. Fisher, for defendants.

LEAVITT, District Judge. A motion has been made and fully argued by counsel on both sides, for the dissolution of the injunction granted by Judge McLean, in July last. The grounds stated in the written motion on file, are in substance, that the order for the injunction was improvidently made, contrary to the evidence in the case, and that the improvements patented to Hussey were known and in public use prior to the date of his invention. Before referring to the grounds upon which the present motion is urged, it will be necessary to notice another, set forth in the answer, and insisted on in the argument by the counsel for the defendants, but not included in the written reasons on file. In their answer they aver that Hussey, on February 5, 1852, by a written instrument, assigned to Minturn, Allen & Co. all his right and interest, under his original patent of 1847, in twenty-three counties in the state of Ohio, including the county of Clark, and that if said patent and the reissued patents are valid, and have been infringed by the defendants, a suit for such infringement can only be maintained by Minturn, Allen & Co., and that Hussey, therefore, in his lifetime had, and his representatives since his death have, no right of action for such infringement. If the legal effect of the contract referred to is as claimed by the defendants' counsel, it is clear that the motion to dissolve the injunction must prevail. It is, therefore, necessary to look into the contract to determine the question. The written instrument referred to in the answer is made an exhibit by the defendants, but was not before Judge McLean when the application for injunction was made, and the question now presented was not brought to his notice. By this agreement or contract, Hussey granted to Minturn, Allen & Co. the exclusive right to make and sell his improved reaping and mowing machine, during the continuance of his patent, within the county of Clark, and a number of other counties in the state of Ohio, and they were to pay ten dollars for each machine made and sold by them. Hussey expressly reserved the right of sending machines of his own manufacture into the territory embraced in the contract. The inquiry arises, whether this contract imports such a transfer of Hussey's interest in this patent as to preclude him from a

remedy in chancery for infringement in making and vending the patented machine within any counties included in the grant to Minturn, Allen & Co. And it would seem that section 17 of the act of July 4, 1836, viewed in connection with the contract, furnishes a satisfactory solution of the inquiry. That section, after declaring that the circuit courts of the United States (or district courts having circuit court powers) shall have jurisdiction of all suits and controversies arising under the patent laws of the United States, proceeds as follows: "Which court shall have power, upon a bill in equity filed by any party aggrieved, in any such case, to grant injunctions according to the course and principles of courts of equity, to prevent the violation of the rights of any inventor, as secured to him by any laws of the United States, on such terms and conditions as said courts may deem reasonable."

The sole question is whether Hussey can be viewed as a "party aggrieved" within the meaning of the provision just quoted. And of this there does not seem to be any reason for doubt, if it be conceded that there has been an infringement as alleged in the complainant's bill. The contract between Hussey and Minturn, Allen & Co., is not and does not purport to be an assignment of Hussey's interest in the patent within the territory named. It is a mere grant of the right to make and sell the patented machine within those limits in consideration of the payment of Hussey of ten dollars for each machine made and sold, reserving to Hussey an unlimited right to send into that territory and vend machines manufactured by himself. Under this contract, Minturn, Allen & Co. are mere licensees of Hussey, incurring no obligation except the payment of the stipulated price of each machine they may construct and vend. Hussey's interest in his patent remained in full force, within the counties included in the grant to Minturn, Allen & Co., subject to their right to make and sell under the contract; and his profit was wholly dependent on the number of machines made and sold by his licensees. And that profit would be reduced in proportion to the number of machines made and sold by others in violation of his right under his patent. Moreover, the right reserved by Hussey to send machines for sale within the territory named, would be of no value to him unless he was protected from unlawful infringement, as every machine made and sold within the district by an infringer would have a direct effect in depriving him of the profit he would otherwise derive from sales made within it. He must be viewed as a "party aggrieved," in the words of the statute, and has heretofore an undoubted right to proceed in equity, for the protection of his rights.

The next inquiry is, whether the court, constituted as it now is, can rightfully order the dissolution of the injunction, on the facts now presented. There is some controversy between the counsel as to what occurred on the application for the injunction before Judge McLean, and the ground of its allowance by him. The order made by him, and which is now before the court, must be viewed as conclusive of the facts which it recites. That order recites that the complainant, Hussey, "had shown a valid right in equity to be protected in the exclusive enjoyment and use of the improvements patented to him in his reissued patents, No. 449 and No. 917, and that the said patents are unlawfully infringed by their use without the complainant's license or authority in the reaping machines made by Whitely, Fassler & Kelly, and that the defendants have failed to show any good cause for impeaching or disputing the validity of said reissued patents." It is clear, from the language of this order, that Judge McLean had distinctly under review, and passed upon: 1st. The novelty of Hussey's invention as covered by his patents; 2d. The infringements of those patents by the defendants, and upon these grounds, after full argument, it was adjudged by him that it was a proper case for an injunction, and the order was accordingly made. Now, it is insisted that the order was made by mistake, and against the evidence, and that the injunction should therefore be dissolved. On the part of the complainant it is contended, that the questions presented on the present motion are precisely those which were before judge McLean when the injunction was ordered; and that its dissolution now, by the action of the district judge sitting alone in the circuit court, would be equivalent to a review and reversal of the judgment of the presiding judge. And most certainly, if the issue and facts involved in the present motion are substantially those submitted to and passed upon by Judge McLean in granting the injunction, it would be improper in this court, as now organized, to order its dissolution. This court will not ignore the true legal theory of the organization of the courts of the United States. By law, a district judge is associated with a justice of the supreme court, in holding a circuit court, and may hold that court alone, in the absence of the superior judge; but he would fail, in a just appreciation of the proprieties of his position, if he did not, under all circumstances, show a proper deference to the action of that superior. And clearly, it would be wrong in a district judge, as a judge of the circuit court, in any case, to review or set aside such action. At least, the reasons that would justify such a course must be peculiar and stringent. In my judgment, the reasons now urged are not sufficient to require this court to set aside the order of Judge McLean granting the injunction in this case. I am not informed whether the learned judge, who ordered this injunction, gave an opinion in writing in deciding the

questions before him. If the opinion was so given, it has not been presented to me; and I can not, therefore, know the course of reasoning by which the judge reached the conclusion he announced: but it appears, by reference to the order made by him, that he held the patents to Hussey—449 and 917—to be valid, and that the defendant had infringed them; and, therefore, that they ought to be restrained from the further manufacture of the infringing machines, until the case could be fully and finally heard on its merits. It is readily conceded, that if, in support of this motion, the defendants have substantially changed the aspect of the case by adducing evidence not presented to Judge McLean, and which it may be fairly presumed, if brought to his notice, would have led him to refuse the injunction, it would be the duty of this court to release them from its further operation. But if the questions involved are essentially the same in the two motions, and the ground of the motion to dissolve is based on the mere fact that the defendants have adduced additional evidence, altogether cumulative in its character, the motion will be refused.

In considering briefly whether the phase of this case is materially changed by the additional proofs offered by the defendants, it will not be necessary to analyze the patents to Hussey now in controversy, nor to notice critically the proofs touching the novelty of the inventions embraced in them. It is not my desire or purpose to prejudge any question which may arise on the final hearing of this case, and which must then be decided. I shall endeavor to limit my inquiries to such considerations as are necessarily connected with the motion to dissolve this injunction. And it may be remarked, in the first place, that the complainant, in his application for the injunction, claimed only that the patents No. 449 and No. 917 had been infringed by the defendants, and these alone are referred to in the order made by Judge McLean. The patent No. 449 is dated April 14, 1857. and is a reissue of a patent to Hussey dated August 7, 1847. The principal element of the invention covered by the original patent of 1847 was an improvement in the cutting apparatus of the reaper and mower, by the use of a slotted finger, the upper and lower parts of which were connected with each other only at the points, leaving an opening in the rear for the escape of material that would otherwise clog and impede the action of the cutter. The reissued patent 449 embraced this improvement in the finger, used in combination with a vibrating scolloped cutter; the structure and operation of which are fully and minutely described in the specification. The patent 917 is also a reissue, embracing substantially the open slotted finger of the preceding patents, with the scolloped cutter, but dispensing with the platform called for in the specification of those patents, and thereby adapting the machine to use as a mower. The novelty of the inventions covered by these two patents was the only question before Judge McLean on the application for injunction. All the evidence in the case had a primary reference to this point, as it was not controverted that the machines made and sold by the defendants embodied substantially the improvements patented to Hussey. And the machines, the prior knowledge and use of which, it was insisted by the defendants, impeached the novelty of Hussey's invention, were the same now relied on for the same purpose. These were the Moore & Hascall Harvester, and the reaper constructed by John M. Leland. The argument then, as now, was that these were identical in the cutting apparatus with the principle of Hussey's patent of 1847, and were known prior to his invention. Thus it will be seen that the questions made before and decided by Judge McLean were the same that are now before this court, on this motion to dissolve this injunction. The fact that the defendants have, since the hearing on the application for the injunction, filed their answer denying the novelty of Hussey's invention, and offering additional evidence on that point, does not negative the fact that the issues then and now are the same. Nor are the presumptions, which justified the order for the injunction, in any degree weakened by the present posture of the case. As to the additional evidence, it is not offered as proving any fact not in issue and controverted, on the original hearing, and is, therefore, altogether cumulative in its character, and affords no sufficient grounds for setting aside the order then made.

In the case of Woodworth v. Rogers [Case No. 18,018], Judge Woodbury, delivering the opinion of the court. says: "The main point (on a motion to dissolve an injunction) is, not whether an injunction should be imposed at all, for that has been already done, and after a full hearing, and till the contrary is shown, it is to be presumed it was done rightly." Several authorities cited. He then proceeds: "The burden is on the respondent to overcome that presumption. It is open to be overcome by new matter, or evidence arising since the injunction was imposed; though very seldom by matter then existing which the party then neglected to present to the consideration of the court." The learned judge. after referring to the presumptions arising in the case in favor of the validity of the patent, says: "Such facts. in these preliminary inquiries into the legal title, as connected with the propriety of imposing or dissolving an injunction, are proper and legal ones to influence the decision of the court, and are paramount in their character over all individual opinions of witnesses. and should usually be conclusive till parties contest these in some issues in a court of law, and disprove or rebut their

force;" and then adds: "Their great strength, when united as here, is entirely superior to any evidence offered against them by the respondent." And this view is the more conclusive as applicable to the present motion, from the fact that the complainant has also taken additional testimony since the hearing, which, to some extent, invalidates and rebuts that offered by the defendants. The presumptions in favor of the novelty of the inventions and improvements patented to Hussey, which may be supposed to have operated on the learned judge who granted this injunction, can not be overlooked or disregarded, in deciding the present motion. They are still in full force, and of sufficient potency at least to neutralize, on this preliminary question, all the evidence adduced by the defendants to show that the patent is invalid on the ground of want of novelty in the improvements for which it issued.

Without dwelling on the various grounds of these presumptions, it will be sufficient to state them very briefly. They arise: First. From the oath of the patentee, that he was the first and original inventor of the improvements covered by the patent of 1847 and the reissues. Second. That the commissioner of patents, after the fullest investigation of the claims of the patentee as to the novelty and originality of his inventions, granted the patents. Third. That Hussey, for more than ten years, was in the undisturbed enjoyment of all the benefits of the exclusive rights granted him by the patent of 1847; that during that time he has made extensive sales of his right to make and use his improved reaper throughout nearly all the grain growing states of the Union; thus evidencing the entire acquiescence of the public, not only in the originality of the invention, but also its great utility. Fourth. That as to the patent of 1847, there has been a direct adjudication establishing its validity in a suit in equity brought, in 1857, by Hussey against Cyrus H. McCormick and others in the circuit court of the United States for the Northern district of Illinois, in which the question of the novelty of Hussey's invention was in question, and strenuously contested by the defendants. Fifth. That injunctions have been granted upon the application of Hussey, by the judges of the circuit court of the United States for the Eastern district of Pennsylvania, restraining sundry persons from the infringement of his patents 449 and 917. The authorities are numerous to support the position, that when such grounds of presumption exist in favor of the novelty of an invention covered by a patent, courts will not refuse an injunction, or, if granted, will not dissolve it unless the patent is impeached by the most conclusive evidence. In the case of Orr v. Littlefield [Case No. 10,590], the court say: "When the complainant has made out not merely a grant of the patent, but possession and use, and sale under it for some time undisturbed, and beside this, a recovery against other persons using it, the courts have invariably held that such a strong color of title shall not be deprived of the benefit of an injunction till a full trial on the merits counteracts or annuls it. In several cases where the equities of the bill were even denied, and in others where strong doubts were raised whether the patent in the end could be sustained as valid, the courts decided that injunctions should issue under such circumstances as have been before stated in favor of the plaintiff, till an answer or final hearing; or, if before issued, should not be dissolved till the final trial, and then cease or be made perpetual, as the result might render just." See numerous authorities cited.

In the case of Ogle v. Ege [Case No. 10,-462], the learned judge says: "I take the rule to be in cases of injunctions in patent cases, that when the bill states a clear right to the thing patented, which, together with the alleged infringement, is verified by affidavit, if he has been in possession, having used or sold it in whole or in part, the court will grant an injunction and continue it till the hearing or further order, without sending the plaintiff to law to try his right." See, also, Curtis on Patents (section 329). Many other authorities on this point might be cited; but those referred to seem to indicate very clearly the proper action of the court on the present motion. It might perhaps be conceded that if the defendants, in support of this motion, had, by their evidence, so clearly and conclusively impeached Hussey's patent, on the ground that he was not the first and original inventor of the improvement patented to him, as to leave no doubt on that point, it might be the duty of the court, against all the presumptions in his favor, to release the defendants from the operation of this injunction. But, in the judgment of the court, the evidence does not make out such a case. I can not now say what may be the conclusion of the court, on the point in controversy, after the final hearing between these parties, when all the proofs and evidence shall be adduced. As the case now stands, the defendants rely on their evidence of the prior knowledge and use of the Leland and the Moore & Hascall machines, to establish the want of novelty in Hussey's invention. As to the Leland machine, it is conceded by the counsel for the complainant that its cutting apparatus is substantially the same as that covered by Hussey's patent of 1847. The evidence shows that the first machine made by Leland was in the spring of 1845, and that it was first used in the harvest of that year. Several others were made the next year, with the open slotted fingers, but there is perhaps some uncertainty whether, in the first of these machines, the fingers were open or closed. It is not, however, material whether the open fingers were first

used in 1845 or 1846, if, as the complainant insists, the invention of Hussey dates back to 1844. And the evidence for the complainant does prove that Hussey had perfected a machine combining the scolloped cutter with an open slotted finger, in the summer of 1844. The witness, Lovegrove, swears that this apparatus was put into a machine for trial during that year, and that Hussey then informed the witness that he had devised the open slotted finger to prevent the cutter from choking. Without intimating any opinion on this question of the priority of invention, I merely refer to it now as showing that the defendants' evidence as to the Leland machine is by no means conclusive to prove that it was of an earlier date than Hussey's invention. From the evidence, it seems that Moore & Hascall's Harvester was first used in the harvest of 1836. It was first made with a straight sickle or cutter; but a scolloped cutter was introduced in 1839. It is insisted by the defendant's counsel that the fingers of this machine had the open slot, substantially as claimed by Hussey.

The defendants have introduced the affidavits of several witnesses to prove the structure and the mode of operation of the cutting apparatus of the Moore and Hascall machine, to show that it had substantially the open slotted finger claimed by Hussey in his patent of 1847. And a finger of one of the machines constructed by Moore & Hascall is in evidence to impeach the novelty of Hussey's invention. I do not propose to give any opinion at this time on the point, nor to examine critically the evidence which bears on it. If there is even a reasonable doubt as to the identity of the fingers of the Moore & Hascall machine, and those claimed by Hussey, it would furnish a sufficient reason for refusing to dissolve this injunction, and for referring the decision of the question to the final hearing. The Harvester, which was the name by which the Moore & Hascall machine was known in Michigan during the time it was in use, was a cumbrous machine, requiring some fourteen or sixteen horses to move it in the field, intended to cut off the heads of the grain, and thresh and clean it by one operation. The fingers of the cutting apparatus were constructed of wood, not less than two and a half feet in length, and framed into the cutter bar, and plates of thin hoop iron were attached to the upper part of the finger, and so arranged as to form a slot, open in the rear, in which the sickle vibrated. The experts, whose evidence has been taken as to the identity of these fingers with the short, iron, open slotted fingers claimed by Hussey, differ widely in their conclusions. It is not necessary now to decide as to the preponderance of this testimony. It is not improper, however, to advert to the fact that there is not only a palpable difference in the construction of the fingers of the two

machines, but also in the mode of their operation. The Hussey machine, in its practical effects, is a reaper and a mower, and cuts the grain or grass near the surface of the earth, while, as already noticed, the Moore and Hascall machine was designed to cut off the heads of the grain.

In the deposition of Moore, one of the inventors of this machine, taken in the case of Seymour v. McCormick,[2] as appears from the record of the case, he states that the design of the machine was "to cut off the grain just below the heads;" and again, "it was not adapted to a mere reaping machine." And he testifies also, that "grain cut with my machine would not be in a state that it could be bound up." The very intelligent experts for the complainant swear, that, from the structure of the fingers in the Moore & Hascall machine, they are not adapted to perform the office of a reaper and a mower. And it is not unworthy of remark that, in the judgment of the commissioner of patents, the prior patent to Moore & Hascall was not regarded as in conflict with the invention of Hussey, patented to him in 1847. But, without going more fully into the consideration of this question of identity, it is clear the evidence does not so conclusively impeach the novelty of Hussey's invention as to require this court to release the defendants from the operation of this injunction, and I have no hesitation in holding that the defendants are not entitled to the order for which they now ask. It is stated by their counsel that they are suffering serious injury from the stoppage of their manufactory, under the operation of the injunction granted in this case. If this is so, it furnishes no reason for a departure from the well-settled rules of chancery practice in patent cases. Nor, under the circumstances of this case, will the injury of which they complain excite much sympathy in their behalf. It appears they have been making reapers and mowers, with the scolloped vibrating cutter, and the open slotted fingers, since the year 1858, and that they commenced the manufacture with the knowledge that they were infringing Hussey's patent. There is no pretense that they proceeded in ignorance of his patented invention. It appears, from the correspondence of two of the defendants, proved and in evidence, that they were apprehensive they would be held to an account for the infringement, and have been exceedingly vigilant in getting up evidence to impeach the novelty of Hussey's improvements. The correspondence shows that long before the commencement of this suit they had avowed a purpose of setting Hussey at defiance, and had used the most strenuous efforts to defeat his rights. Among other things, it appears that they had proposed to organize a combination of

---

[2] [See Case No. 8,726.]

all those interested in the manufacture of mowers and reapers in the United States who had not taken licenses from Hussey, for the purpose of contesting his claim. They seem to have entertained the hope that a combination of sufficient means and influence could be formed to secure a triumph before any court and jury. I forbear to speak in such terms as the facts might well justify of the spirit and motives which seem to have impelled these defendants in their course in this transaction. I advert to it now to show they were not taken by surprise in the institution of this suit, and in the order for the injunction which has issued. It was precisely what they had long before anticipated, and what they seemed determined to bring about. They have not, therefore, any very well-grounded cause of complaint if arrested for a time in their manufacturing operations. The court will see to it that there is no unreasonable delay in bringing the case to a final hearing. Motion to dissolve injunction overruled.

[For other cases involving this patent, see Hussey v. Bradley, Case No. 6,946; Hussey v. McCormick, Id. 6,948.]