CARY and others *v.* LOVELL MANUF'G Co., Limited.

*(Circuit Court, W. D. Pennsylvania.* June 12, 1885.)

PATENTS FOR INVENTIONS—INFRINGEMENT—PRELIMINARY INJUNCTION—PRE-VIOUS ADJUDICATION AS TO VALIDITY OF PATENT.
    Upon a motion for a preliminary injunction, where infringement is clear, the court will accept and follow an adjudication sustaining the patent made in another circuit, on a final hearing, and after full consideration.

In Equity.

*George H. Christy, W. C. Witter,* and *W. H. Kenyon,* for complainants.

*John K. Hallock* and *Wm. Bakewell,* for defendant.

ACHESON, J. This case is now before the court on a motion for a preliminary injunction.

The suit is upon letters patent No. 116,266, granted on June 27, 1871, to Alanson Cary, whose invention relates to spiral springs, usually made in a conical form, of hard-drawn steel wire coiled and forced to proper shape. In the ordinary operation of bending or coiling the wire into springs, the metal (the specification states) is unavoidably weakened, the outer portion of the wire coil being drawn or stretched, while the inner portion is crushed or shortened. The invention consists in a process for restoring to the wire of the spring the strength and elasticity which it lost by this distortion, and this is effected by subjecting the spring, after it has been completed in the usual manner, for about the space of eight minutes, to "a degree of heat known as 'spring-temper heat,' which is about 600 degrees more or less," whereby a complete homogeneity of the metal is produced, and increased strength, elasticity, and durability are imparted to the spring. The claim of the patent is for "the method of tempering furniture or other coiled springs," substantially as described.

For the last 10 years this patentee has been involved in constant litigation in defending or enforcing his rights under his patent. In June, 1875, the Eagleton Manufacturing Company brought suit against parties manufacturing springs under the Cary patent, for an infringement of letters patent granted December 19, 1871, to one Eagleton, substantially covering the invention described and claimed in the previous patent to Alanson Cary. This suit, which involved the question of priority of invention as between Cary and Eagleton, resulted favorably to the former, as will appear by the opinion of the supreme court delivered May 5, 1884, in *Eagleton Manuf'g Co.* v. *West, etc., Manuf'g Co.* 111 U. S. 490; S. C. 4 Sup. Ct. Rep. 593. In the mean time these complainants, in October, 1879, brought suit in the United States circuit court for the Southern district of New York, against Raphael H. Wolff and others, for the infringement of the Cary patent. In that suit the defendants, (among other defenses,) by their answer, denied the validity of the patent, denied that Alanson Cary was the first inventor of the patented process, alleged prior uses and prior publications in great numbers, denied that the invention was a new or useful one, and also denied the fact of infringement. The litigation in that case was most protracted and expensive. A very large amount of testimony, by experts and other witnesses, was taken therein. The case was hotly contested throughout, and on the part of the defense the most strenuous efforts were made to defeat the patent. The able counsel for the defendants were assisted by experienced experts. The case was elaborately argued on final hearing in the fall of 1884. In February, 1885, Judge WHEELER filed an opinion sustaining the patent, finding infringement, and directing a decree in favor of the complainants. *Cary* v. *Wolff, ante,* 139.

I have been thus particular in recounting the facts connected with this litigation because I am now asked upon this interlocutory hearing to consider the question of the validity of the patent as open, and to disregard the decision made in the Second circuit. The defendants' counsel earnestly contend that the theory upon which the court there sustained the patent is false. The rationale of the Cary invention, according to Judge WHEELER, is this:

"The process of the patent [he says] does not merely add temper as a quality to steel which did not have it before; it restores the lost strength and elasticity of the wire consequent to the displacement of the particles of which it is composed, by the process of making it into springs. The discovery was that the application of heat would effect that restoration, which is a different thing from tempering." *Ante,* 140.

Now, it will be observed that this is the expressly declared theory of the patent itself, and it was accepted as sound by the patent-office, and this, (as Mr. Cary states in his affidavit,) after tests were made by the examiner personally. And if it be true that the theory of the restoration of strength and elasticity, lost by the distortion of the wire in the coiling of it, was not questioned in the *Wolff Case* by either

counsel or expert, this very fact tends strongly to create confidence in the soundness of that theory.

The defendant's theory, as set forth in Mr. Lovell's affidavit, is that the loss of strength and elasticity is due, not to the coiling of the wire into springs, but to the previous cold drawing of it, and that the restorative effect of the Cary process is no other or different from that which was, prior to his invention, well known in the art to result from a partial reheating and gradual cooling of steel which had been hammered, rolled, or otherwise manipulated, the elasticity of which had been thereby impaired or partially destroyed. But I am not yet satisfied that this is the true theory of the Cary process, and for the present I think it is my duty to follow here the conclusion of the court in the Second circuit. Upon this question it seems to me the case comes fairly within the general rule, that upon a motion for a preliminary injunction, where infringement is clear, the court will accept and follow an adjudication sustaining a patent made in another circuit on a final hearing, and after full consideration. *Green* v. *French,* 4 Ban. & A. 169; *Mallory Manuf'g Co.* v. *Hickok,* 20 FED. REP. 116; *Coburn* v. *Clark,* 24 O. G. 399; S. C. 15 FED. REP. 804. Adhering, then, for the time being, to Judge WHEELER's view touching the rationale of the Cary invention, I see nothing in the *ex parte* affidavits now presented which should lead me to reject his decision at this preliminary stage of the case.

Moreover, there are cogent reasons which induce me to adopt the course I have just indicated. The defendants were not ignorant of the pendency of the *Wolff Case.* It is shown that for at least three years before that litigation closed, their Mr. Lovell was fully informed in respect to it. He watched the case with interest as it progressed, and several times conversed with Wolff about the suit, and the chances of a successful defense therein, expressing the hope that Wolff might win. It was his interest to defeat the Cary patent in that contest, and he had every opportunity of assisting in the defense by giving information or otherwise. But he did not do so, nor did he even suggest to the defendants therein the theory of the Cary process upon which he now insists. In this regard the case here is not unlike that of *Robinson* v. *Randolph,* 4 Ban. & A. 163, in which, on a motion like the present one, the court declined to listen to an affidavit alleging a new defense. Again, during the pendency of the *Wolff Case,* and with full knowledge of the risk taken, the defendants embarked in the manufacture of coiled springs by the infringing process. Still further, the two adjudications above mentioned, establishing the complainant's rights, have been obtained after a most tedious litigation, attended with great expense, and the patent has now only three years to run. And, finally, I am convinced that an injunction is the only efficacious remedy for the complainants under all the circumstances.

Upon the question of infringement the case is free from difficulty

or doubt. It is quite clear to me that the defendants have been using the Cary process. It may, indeed, be true that they have been using a higher degree of heat than that specially mentioned in the patent; but so did the defendants in the case of *Cary* v. *Wolff*. So long as the springs are kept below a red heat, the substance of the invention (as Judge WHEELER says) is taken. *Tilghman* v. *Proctor*, 102 U. S. 707. Nor, in my judgment, is it at all material that the defendants cool their springs by plunging them into cold water. This also was the practice of the defendants in the *Wolff Case*. The beneficial results are secured by subjecting the springs to the prescribed heat, and the patent is altogether silent as to the manner of cooling. And if the springs are not raised to a red heat, it is immaterial whether air-cooling or water-cooling is practiced.

Let a preliminary injunction issue.