## GENERAL ELECTRIC CO. v. INCANDESCENT PRODUCTS, Inc.

(District Court, D. New Jersey. May 22, 1922.)

**I. Patents ⟐297(2)—Showing infringement of patents sustained in other jurisdiction generally entitles patentee to preliminary injunction.**

Ordinarily a patentee, who has shown that the validity of its patent has been sustained in other jurisdictions, is entitled to a preliminary injunction on a showing of infringement.

**2. Patents ⟐328—1,180,159, for nitro-tungsten electric lamps, held infringed.**

The Langmuir patent, No. 1,180,159, for electric lamps composed of a tungsten filament in nitrogen gas, particularly claims 4 and 5, was not limited to the specific sizes or quantities of the elements employed to achieve the result disclosed, which quantities were not specified in the claims, and is infringed by a lamp containing the same elements operating in substantially the same way, though the quantities of the elements are not the same, and the result produced is not as efficient.

**3. Patents ⟐328—1,180,159, held not anticipated.**

The Langmuir patent, No. 1,180,159, for an electric lamp having a tungsten filament in nitrogen gas, *held* not infringed by prior patents for a vacuum tungsten lamp, or for a lamp having a carbon filament in nitrogen gas.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & indexes

In Equity. Suit for infringement of a patent by the General Electric Company against the Incandescent Products, Inc. On application for a preliminary injunction. Application granted.

Frederick P. Fish, of Boston, Mass., Howson & Howson, of New York City, and Albert G. Davis, of Schenectady, N. Y., for plaintiff.

Richard Eyre, W. N. Seligsberg, and Harvey C. Price, all of New York City, for defendant.

BODINE, District Judge. The present application is for a preliminary injunction. At the time of the argument, the plaintiff seemed so clearly entitled to its remedy that an injunction would have been immediately granted, but for the request of defendant's counsel that he be given time to file a brief.

The General Electric Company is the owner of United States letters patent dated April 18, 1916, No. 1,180,159, issued to Irving Langmuir. The defendant, a New Jersey corporation, was organized October 28, 1921, for the purpose of engaging in the general contracting business, including the manufacture of things electrical.

The scope of plaintiff's patent, so far as material to this issue, is set forth in claims 4, 5, 12, and 13 of the patent, which are as follows:

4. The combination of a lamp bulb, a filling therein of dry nitrogen at a pressure materially in excess of that corresponding to 50 millimeters of mercury and a filament of tungsten of large effective diameter, the filament being thereby adapted for operation at a temperature higher than that which it would have if operated in a vacuum at an efficiency of one watt per candle.

5. An incandescent electric lamp having a filament of tungsten of large effective diameter and a bulb or globe therefor filled with dry nitrogen at a pressure as high or higher than that corresponding to 300 millimeters of mercury, the filament being thereby adapted for operation at a temperature higher than that which it would have if operated in a vacuum at an efficiency of one watt per candle.

12. In an incandescent lamp, the combination of the lamp bulb, a tungsten filament therein, and a gaseous filling, the effective diameter of the filament being sufficiently large and the heat conductivity of the filling being sufficiently poor to permit the lamp to be operated with a filament temperature in excess of that of a vacuum tungsten lamp operating at an efficiency of one watt per candle and with a length of life not less than that of such a lamp.

13. An incandescent electric lamp having a closely coiled tungsten filament, the coil giving the effect of a filament of large diameter, an inclosing bulb and a filling of gas having a materially poorer heat conductivity than hydrogen and at a pressure as high or higher than 300 millimeters of mercury, the filament being adapted for operation in said gaseous filling at a temperature higher than that which it would have if operated in a vacuum at an efficiency of one watt per candle.

The validity of these particular claims was upheld in General Electric Co. v. Nitro-Tungsten Lamp Co. (D. C. Oct. 27, 1919) 261 Fed. 606 (opinion by Judge Mayer), affirmed June 2, 1920 (C. C. A.) 266 Fed. 994 (opinion by Judge Hough); General Electric Co. v. Continental Lamp Co. (C. C. A.) 280 Fed. 846 (April 3, 1922, opinion by Judge Manton); General Electric Co. v. Alexander et al. (D. C. Oct. 29, 1921) 277 Fed. 290 (opinion by Judge Mayer), affirmed April 10, 1922 (C. C. A.) 280 Fed. 852 (opinion by Judge Hough). The corresponding British patent was upheld by the House of Lords in British Thomson-

Houston Co., Ltd., v. Corona Lamp Works, Ltd., decided December 19, 1921.

[1] The plaintiff ordinarily, having shown that the validity of its patent had been sustained in other jurisdictions, would be entitled to an injunction upon the showing of infringement. Cary v. Lovell Co. (June 12, 1885) 24 Fed. 141 (opinion by Judge Acheson); Edison Electric Light Co. v. Electric Mfg. Co. (C. C. July 20, 1893) 57 Fed. 616 (opinion by Judge Seaman); Wallerstein v. Christian Feigenspan (June 8, 1914) 215 Fed. 919, 132 C. C. A. 157 (opinion by Judge McPherson); Elite Pottery Co. v. Dececo (Jan. 16, 1907) 150 Fed. 581, 80 C. C. A. 567 (opinion by Judge Buffington).

The defendant's business is of most recent origin. Its first price list appeared the latter part of December, 1921, nor were any business steps taken by it until long after the validity of the plaintiff's patent had been sustained, after exhaustive litigation in other jurisdictions, as above indicated. The courts have written the history of incandescent electric light lamps prior to the Langmuir invention. See the opinion of Judge Lacombe in Edison Electric Light Case (1892) 52 Fed. 300, 3 C. C. A. 831.

The Edison elements were three—a carbon filament, in a vacuum, inclosed in a glass chamber. These elements remained the same, with refinements, until Langmuir introduced into the art, as shown by the claims in suit, a co-ordination between a coiled tungsten filament in nitrogen, argon, or mercury vapor gas, inclosed in a glass chamber under pressure. The results obtained and reasons for the success of the Langmuir invention are admirably expressed by Judge Mayer in the Nitro-Tungsten Lamp Co. Case, supra, 261 Fed. 607:

"The Langmuir lamp has proved extraordinarily successful. In street and display illumination it dominates the commercial field, and from the standpoint of aggregate product for use in many ways, and return in dollars and cents, the record demonstrates unquestioned commercial utility. With this indisputable success, the question is whether Langmuir has merely taken advantage of well-known facts and data to an extent within the knowledge of only a man having the qualifications of one skilled in this art, or whether the accomplishment was so advanced as to rise to invention. Langmuir is a scientist of extensive education and extraordinary ability, possessed of persistency and patience, and gifted with the kind of imagination which is valuable, when curbed by analysis. With this equipment he undertook the task, which resulted in his 'present invention,' which 'relates to improvements in incandescent electric lamps whereby it is possible to produce a lamp capable of operating at extraordinarily high efficiency and giving a light of marked increase in intrinsic brightness and whiteness.'"

Prior to the Langmuir invention, it was well known to electrical engineers that an increase in temperature would increase the power of the light, but lamps to be ordinarily useful must have life as well as power. The increase in temperature would increase the evaporation of the carbon, resulting in short life and the blackening of the glass container. Experimentations carried on by Mr. Edison in the early stage of lamp-building indicated that gas under pressure would retard the evaporation of the carbon filament. Experimentations, however, indicated that the gas carried away heat from the filament by convection, resulting in no gain whatsoever. Further the carbon filament then used acted badly in gas.

Langmuir's contribution to science lay in increasing the *effective diameter* of the filaments, thereby compensating for the convection losses, which were not increased in the same ratio as the light emissions were increased. When Langmuir commenced his experimentations, the voltage and type of lamp used throughout the country was fixed. His success was obtained by increasing the effective diameter of the filament in use in the standard lamp. It was sometimes necessary to reduce the actual diameter of the filament, in order that the same might be properly coiled and its effective diameter thereby increased. The co-ordination or correlation of the parts used is fully disclosed in the patent. Judge Hough, in the Nitro-Tungsten Case, 266 Fed. 1000, said:

"He did not invent any nitrogen-filled bulb with any tungsten filament in it, but a special article of special proportions and a carefully stated co-ordination of parts."

The defendant's lamps are designed for use in the ordinary circuits. Those manufactured directly are rated at 150, 100, and 75 watts. The imported Austrian lamps sold by the defendant are rated at 40 and 25 watts. There is in each a glass container with a coiled tungsten filament, filled with nitrogen gas under pressure. In the Austrian lamp the gas is a mixture of argon and nitrogen. There is nothing to distinguish the defendant's lamps from the plaintiff's, and the entry of the defendant into business, after the establishment of the validity of the plaintiff's patent in another jurisdiction, indicates not only a slavish imitation, but a willful disregard of established rights.

[2] These circumstances alone would justify, under the authorities above cited, the granting of a preliminary injunction; but the contention of the defendant is that, nowithstanding the number of times the courts have upheld the patent, new facts are herein involved which affect the scope and validity of the patent, so that a preliminary injunction is not now proper. The defendant cites the Nitro-Tungsten Case, 266 Fed. 994, 996, where the description of the particular infringing lamp is set forth as the bright limit of judicial determination with respect to the scope of that decision. The infringing lamp was described as follows:

"The subject, then, of this litigation, is what defendant has made and sold, viz. the 'comet' or 'standard multiple gas-filled tungsten' lamp. having (in a typical lamp) a tungsten filament .003 inch in diameter, helically coiled to a coil diameter of about .017 inch; dry nitrogen in the bulb at a pressure (cold) of about 700 mm.; and a starting efficiency of .82 to .95 watt per candle. After 500 hours' operation at rated voltage, the temperature of the filament will still be approximately 2520° C., or about 400° higher than that of one of same metal in a vacuum lamp operating at about 1 watt per candle."

The court, however, did not decide that the plaintiff's patent had only such limits. It did, however, decide that the claims in suit were novel and that—

"It was impossible to give exact measurements, because the economic object of the lamp was to diminish the wattage per candle, and dimensions must be proportioned to the designed wattage; i. e., substantially to the size of the lamp—something to be worked out according to rules presumably long familiar to a competent electrical engineer. It was unnecessary to do more than

state the limits of invention in terms of result, because the results desired are not functional, and do indicate limits in terms of lamp life and candle power which are likewise presumably quite familiar to any competent electrician. When a claim defines achievement in words no broader than the disclosure, and in phrases which, as interpreted by competent workers in the art, tell one how to do what the patentee did, it can rarely be called indefinite."

Clearly the decision is not confined to lamps containing certain definite and specific dimensions because these specific dimensions Langmuir never disclosed.

The defendant further contends that the plaintiff's patent is limited by the measure of the effectiveness and life of the lamps, as contrasted with those in which a vacuum was used. The patent was granted on a structure definitely described and clearly portrayed. The Patent Office granted a privilege for the structure and not for the result. O'Reilly v. Morse, 15 How. 112, 14 L. Ed. 601. The courts protected the patent, because it described a novel and mechanical arrangement. It was a device, and not a result, which was patented, and the defendant can avail itself of nothing because in its manufacture the parts used by Langmuir are so inartistically correlated as to produce a less efficient result. Judge Buffington said, in Mitchell v. Ewart Mfg. Co., 81 Fed. 391, 395, 26 C. C. A. 443, 447:

"While the appellant has avoided a mere servile copy of form, he has appropriated the substance of the Dodge invention. That in doing so he has rendered inoperative the function on one groove will not suffice to relieve him from the charge of infringement. * * * He gets the same result, which Dodge first showed, by substantially the same means, and in substantially the same way."

The defendant in this case has not even avoided the servile copy of form which Judge Buffington referred to. It has copied everything, but in its manufacture it may or may not have fallen below the standards attained by the plaintiff. On such shifting ground it cannot predicate a defense.

Further, in the fourth and fifth statements of claim there is no limitation of lamp life or efficiency expressed as in some of the other claims. The precise limitation is that the filament shall be "adapted for operation at a temperature higher than that which it would have, if operated in a vacuum at an efficiency of one watt per candle." Clearly the defendant's lamps attain a temperature higher than they otherwise would attain, and fall within the scope of the patent in suit.

[3] Defendant further calls attention to the prior French patent, La Tang No. 384,915, as an anticipation. This patent was for a vacuum tungsten lamp having a coiled filament. Gas under pressure was not used in this lamp, and the reason for the coiling was to concentrate the light. The result was a detriment to efficiency. Such a lamp was clearly not an anticipation. It also refers to the Edison patent, No. 274,295, of March 20, 1883. This patent was before Judge Mayer in the Nitro-Tungsten Case, 261 Fed. 608, 609, who said:

"Edison, in his patent No. 274,295, of March 20, 1883, made a serious attempt to produce a gas-filled nitrogen (inter alia) lamp. He failed, and Howell graphically describes how completely he failed."

Lord Finlay said, in the House of Lords, speaking of Edison's British patent, corresponding to his American patent here cited:

"This proposal never worked in practice, and the evidence in the present case shows that a lamp with a carbon filament in such a gas as nitrogen could never work."

The plaintiff having established its patent in other jurisdictions, and having shown a slavish imitation, by the defendant, of the product manufactured under its patent, is entitled to an immediate preliminary injunction.