WITZEL et al. v. BERMAN.

(District Court, S. D. New York. June 23, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WIRE MATTRESS.

The Witzel reissue patent, No. 13,125 (original No. 921,494), for an improvement in spring or woven wire mattresses, consisting of a side guard to prevent the slipping or spreading of the upper mattress, was not anticipated, and discloses patentable invention, as well as utility as evidenced by the commercial success of the invention; also, *held* infringed.

In Equity. Suit·by Charles J. Witzel and the Englander Spring Bed Company against Barnet Berman. On final hearing. Decree for complainants.

Decree affirmed in 212 Fed. 734. ·

Chester A. Weed, of New York City, for complainants.

Samuel Brand, of New York City, for. defendant.

MAYER, District Judge. This is one of those simple inventions in which a correct determination depends partly upon a close analysis of the prior art and partly upon acquiring now the mind and eyes of the artisan as he looked upon the problem before it was solved.

The suit is for infringement of reissued letters patent No. 13,125 granted to Charles J. Witzel, June 28, 1910; the·original patent having been granted May 11, 1909, and reissue applied for on June 12, 1909. Complainants charge the infringement of ten claims (7, 10, 13, 14, 19, 20, 21, 22, 23, and 24).

The subject-matter is an improvement in spring and woven wire mattresses by which the hair or other mattresses that are supported on the same are held in position thereon and prevented from shifting to one side or the other.

In the specification it is stated that one of the objections to the metallic bedsteads in general use is that the mattresses which are placed on the wire mattresses shift on the same from one side to the other or so spread that an unsightly appearance is the result.

The object of the invention is:

"To obviate the shifting or spreading of the hair or other mattresses on the wire mattresses by holding the same securely in position on the wire mattress and prevent, in a reliable manner, the unsightly shifting or spreading of the hair mattress on the same; and for this purpose the invention consists of a wire mattress which is provided at both sides in the preferred form, with bent up longitudinal guards which are reinforced by heavier strands along the side edges of the wire mattress and at the upper edges of the bent up guards, said bent up guards being attached to bent up lugs on the transverse end straps of the wire mattress, and the bent up lugs connected by coiled springs with auxiliary lugs which are attached·to the metallic cross or transverse bars or irons at the ends of the wire mattress by which the same is supported on the bedstead."

The claims are set forth in technical phraseology substantially similar in import to the stated object of invention.

To one not a housewife nor an hotel keeper, the improvement might seem of small consequence, but the record shows a commercial suc-

cess so substantial as to lead to the conclusion that the invention dealt with a subject of considerable importance in this branch of business.

The defenses are: (1) That the claims are functional; (2) non-invention because of the simplicity of the mechanical construction; (3) that the prior art shows that Witzel's claims cover an aggregation of certain good elements in previously existing structures; and (4) that in view of the prior art the claims are at best only for the specific mechanism described, and, so treated, defendant's structure does not infringe.

No time need be spent on the question of infringement, because, even under a close and narrow construction of the Witzel claims, defendant's structure clearly infringes, and it is significant in this connection that defendant has adopted the Witzel form rather than his own (letters patent to Berman, No. 580,565, dated February 21, 1911).

In this record, it is established that for many years the slipping, flattening, and spreading of soft or stuffed mattresses was the occasion of frequent complaint—as testified to by a number of apparently reliable and (in some instances) disinterested witnesses. The dealers in mattresses and bedsteads recognized that, if this defect could be overcome, greater comfort and neatness could be attained and wear and tear lessened.

Mr. Kreuzkamp, an experienced manufacturer in this line and the secretary and treasurer of Englander Spring Bed Company, one of these complainants, recognized the utility of the Witzel patent and secured the exclusive license from Witzel at a substantial figure. From the fall of 1909 until January 1, 1913, the Englander Company had sold, over a large territory, about 109,000 of these patented side guard springs at an aggregate price of nearly half a million dollars.

As prior to the Witzel there was not on the market a similar structure, it is obvious that the invention in question filled a genuine need in this line of business. Probably capable business methods contributed to success, but the evidence is convincing that the controlling reasons for success were the merit and practical usefulness of the article.

The nearest approach to the Witzel is the Hoey patent (No. 671,-068, April 2, 1901). The result sought to be attained by Hoey was in substance the same as that sought by Witzel—thus showing that the subject was one which had attracted attention in this art.

It is obvious to the untrained eye that Hoey failed to accomplish the desired result, and there is no evidence that the Hoey was ever made or placed on the market.[1]

It sometimes happens that a valuable idea disclosed in a difficult or highly technical art is not availed of at the time, because of lack of funds or reluctance to experiment financially with a novel structure ahead of the times, but this art deals with mechanically simple articles of necessity and widespread use, and, if Hoey had conquered the difficulties, it is fair to assume that his patented structure would have found its way to the commercial world.

Later (letters patent No. 231,699, January 2, 1906), Gillette sought

---

[1] Note.—Any one interested in a technical description of its shortcomings may read Expert Bentley's testimony, C. R., page 169 et seq.

to solve this alleged easy problem, but an examination of his specifications and complainants' exhibit photograph will show to the layman's eye the impracticability also of this device, and here, likewise, there is no evidence of manufacture or use.

The other patents in evidence (Billington and Palmer) need not be discussed, for they are even further removed from prior art suggestion than Hoey and Gillette.

Much emphasis is laid by defendant on the Owen Secret Bed manufactured by the D. T. Owen Company of Cleveland, Ohio, a large concern of high repute. Mr. Clark, who has been connected with the D. T. Owen Company since 1903 and manager of its New York branch for eight years, testified, in effect, that the Owen Secret Bed did not accomplish the Witzel result, and that because it was unsalable its manufacture was discontinued after the loss of a "great many thousands of dollars." (See particularly X. Q. 49, C. R. 154.)

I regard Mr. Clark's testimony of more weight and assistance than that of experts. He is familiar with the art and its requirements and has given his testimony in the understandable language of a business man. In view of his testimony and the fact that the file wrapper disclosed the Billington, Palmer, and Hoey patents, the presumption of patentable novelty is not easy to overcome in this case.

The characteristics of the Witzel may be briefly summarized as follows: (a) The side guard is under tension so that it will automatically return to its initial position and take up the slack; (b) the guard is of less height than the stuffed mattress; (c) the guard is a part of the spring mattress structure and is removable therewith, while it does not interfere with the use of the spring mattress and the stuffed mattress in the ordinary manner; (d) the guard is flexible and soft, and, although the ends to which it is attached are unyieldable, the guard itself is yieldable with the bottom.

These characteristics have produced a new result, namely, a practical side guard of demonstrated utility.

It is, of course, easy to point out at this time what might be done to make the Hoey and the Gillette practical; but it may here be observed in the words of Judge Coxe in Rajah Auto Supply Co. v. Emil Grossman Co., 188 Fed. 73, 110 C. C. A. 143:

"The invention is, of course, a narrow one, but it belongs to that large class where the courts have sustained improvements over the prior art, which produce a new and beneficial result that materially advances the art to which they belong."

Complainants may have a decree with costs for injunction and accounting.

Settle decree on five days' notice.