WITZEL et al. v. BUTLER BROS.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 172.

PATENTS ☞328—INFRINGEMENT—WIRE MATTRESS.

    Infringement of the Witzel reissue patent No. 13,125 (original No. 921,494), for a wire mattress, by a mattress having no tension spring, which is a feature of most of the claims, *held* doubtful, but an order granting a preliminary injunction affirmed, to await full hearing, in view of prior decisions sustaining the patent.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from an order of the District Court, Southern District of New York, granting an injunction pendente lite restraining defendant from selling woven wire mattresses alleged

to infringe United States reissue No. 13,125, granted June 28, 1910, to C. J. Witzel for a wire mattress.

Charles Neave and Samuel E. Darby, both of New York City, for appellants.

C. A. Weed, of New York City, for appellees.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. This patent was before us in Witzel v. Berman, 212 Fed. 734, 129 C. C. A. 344, in which case we sustained the decision of Judge Mayer (212 Fed. 447), holding the patent valid and infringed by Berman. The details of the device covered by the patent are set forth in these opinions and need not be here repeated.

The main question presented on this appeal is whether defendant's device contains the so-called "tension spring" of the Witzel patent. We think Judge Hand was in error in holding that the Berman mattress, which was before us in the former suit, had no tension spring; that it had no auxiliary spring to keep the side guard constantly under tension. Berman's spring was not as efficient as the spring of the patent, because for each side guard there was one spring, instead of two, and it was located at the lower, instead of the upper, edge of the side guard. But it was there—a means for holding the side guard under lengthwise tension, automatically taking up slack. Our decision in the Berman Case, therefore, does not necessarily dispose of this one, where there is no means at all, other than the individual resiliency of the sideguard, for maintaining lengthwise tension.

It sems unnecessary to go over in detail the amendments made in the Patent Office, or to discuss the arguments based thereon. Assuming that the specifications and claims as originally presented were in the precise form in which they now are, a study of the specifications seems to indicate that the auxiliary side springs, or some equivalent means for holding the side guards under tension and taking up slack, was thought by the patentee to be an important part of his invention, not a mere preferable modification. The drawings show, and the description has much to say about, the auxiliary angular lugs, $d^2$, attached to the angle irons, $e$, at the head and foot of the mattress, and the auxiliary coil springs, $d$, which are attached to these auxiliary lugs, and thus "serve to keep the bent-up guards rigidly in taut position in the same manner as the coil springs, $d$, keep the main portion or web of the woven wire mattress in tightly stretched position."

Some of the claims enumerate specifically the "coiled springs"; others, "means for holding side guards under longitudinal tension"; others, "side guards under lengthwise tension," without stating how such tension is effected. But they are all to be read in the light of the combination disclosed, and said to be a novel improvement, and are to be interpreted accordingly.

Reference is made to the rule, well established by many decisions, that in construing claims courts are to avoid reading into one claim words which will make it identical with another claim. That rule is well applicable when there is some complicated structure of many elements, some of them susceptible of subcombination. But here we have

a structure which, however novel and meritorious it may be, is an extremely simple one, combining only a few elements. Nevertheless upon it 24 claims have been allowed. The vocabulary of our language is sufficiently extensive to permit the making of many verbal changes in literature of this sort, but we very much doubt whether the most skillful and experienced solicitor or Patent Office examiner could possibly phrase 24 separate claims on a structure so simple as this without substantial duplication and reduplication.

One claim alone, No. 23, contains no verbal reference to auxiliary "coiled springs," or "means for holding under tension," or "a side guard under lengthwise tension." It merely says that the "side guards are stretched between" the upstanding projections, without indicating any continued "tension" other than such as the use of the word "stretched" implies. Textually this claim covers defendant's device as textually no other claim will. If the art will warrant the finding of validity in this claim, when construed so as to cover an upper wire originally stretched between the lugs (with no auxiliary lugs or springs) and maintaining lengthwise tension solely by its inherent elasticity, then it would seem to cover defendant's devce. If, however, the prior art makes it necessary to read into this claim some equivalent of the particular auxiliary devices to maintain lengthwise tension which are found in the other claims, then defendant's device may not be covered by its terms. The question is a debatable one, and in view of the former holdings as to this patent we are not now inclined to reverse the action of the District Judge in granting a preliminary injunction. More light on the subject may be obtained at final hearing.

Order affirmed.