### GENERAL ELECTRIC CO. v. P. R. MALLORY & CO., Inc.

(District Court, S. D. New York. February 2, 1923.)

1. Patents ⬳294—Motion for temporary injunction addressed to judicial discretion.

In a patent infringement suit, a motion for an injunction pending the litigation is addressed to the judicial discretion of the court.

2. Patents ⬳297(6)—Temporary injunction granted, when patent has been upheld and there are no new facts raising serious doubt.

An injunction pendente lite will be granted in a patent infringement suit, where the claims of the patent have been adjudged valid in previous litigation with other parties, and no new facts of a character to throw serious doubt on the previous adjudication are presented, and there is no substantial question as to infringement.

3. Patents ⬳289—Infringement suit held not barred by laches.

A patent infringement suit *held* not barred by laches, though plaintiff had permitted several years to go by before it commenced suit, where a considerable amount of litigation had been necessary before it obtained decisions of an appellate court upholding the validity of the patent, especially where defendant went into the business after an adjudication of one of the patents.

4. Patents ⬳303—Attack on validity, on theory that experts in prior litigation were wrong, not entertained on motion for injunction.

On motion for a temporary injunction in a suit for infringement of a patent, the validity of which has been upheld in previous litigation, an

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

attack on the validity of the patent, on the theory that plaintiff's experts in the prior litigation were wrong, and that the court was thus led into error, will not be entertained.

5. Patents ⊜328—1,018,502, for electric light filament, and 1,180,159, for incandescent lamp, held valid.

The Just and Hanaman patent, No. 1,018,502, for a filament for electric incandescent lights and the Langmuir patent, No. 1,180,159, for such a lamp with a nitrogen-filled bulb and tungsten filament, *held* valid on motion for injunction pending the litigation.

6. Patents ⊜303—Assumed that courts considered file wrapper in previous litigation.

On application for preliminary injunction in suit for infringement of patent, which has been upheld in previous litigation in the District Court and Circuit Court of Appeals, it must be assumed that those courts considered the file wrapper, which was a part of the record, and found nothing therein affecting validity.

7. Patents ⊜303—Anything said or done by applicant after application in another connection immaterial.

Anything written or said by applicants for a patent after the date of the application, in any other connection minimizing, distinguishing, or even repudiating the invention, is wholly immaterial in passing on the validity of the patent, which represents a contract between the United States and the patentee, and, in the absence of fraud, cannot be so vitiated.

In Equity. Suit by the General Electric Company against P. R. Mallory & Co., Inc. On motion for preliminary injunction. Motion granted.

F. P. Fish, of Boston, Mass., Hubert Howson, of New York City, and Albert G. Davis, of Schenectady, N. Y. (Alexander D. Lunt, of Schenectady, N. Y., of counsel), for plaintiff.

Duell, Warfield & Duell, of New York City (F. P. Warfield and L. A. Watson, both of New York City, of counsel), for defendant.

MAYER, Circuit Judge. The cause is the usual infringement suit. The motion is for a preliminary injunction. The patents are (1) the Just and Hanaman patent, No. 1,018,502; and (2) the Langmuir patent, No. 1,180,159. These patents have been the subject-matter of spirited contest in this court and in the Circuit Court of Appeals for the Second Circuit. General Electric Co. v. Laco-Philips Co., affirmed 233 Fed. 96, 147 C. C. A. 166; General Electric Co. v. Nitro-Tungsten Lamp Co. (D. C.) 261 Fed. 606, affirmed (C. C. A.) 266 Fed. 994; General Electric Co. v. Alexander (D. C.) 277 Fed. 290, affirmed (C. C. A.) 280 Fed. 852. In addition, there have been litigations elsewhere.

Defendant supplies the tungsten wire to customers alleged by plaintiff to be infringers and frankly assumes the burden of defending suits against its customers. Proof of infringement (if there be infringement) is clear, and the defenses before the court are (1) the invalidity of both patents; (2) noninfringement of the Just & Hanaman patent; (3) laches. The record is voluminous, the briefs the same, and it has taken some time (in view of other duties) to examine these extensive papers.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] At the outset is presented a question of acute importance in patent litigation. It must not be forgotten that this is not a final hearing, but a motion for an injunction pending the litigation. Such an application is addressed to the discretion of the court; i. e., the judicial discretion.

[2] An unbroken line of authority in this circuit requires the granting of an application for an injunction pendente lite in a patent case, where the claims of the patent in controversy have been adjudicated to be valid, and where there is no substantial question as to infringement, and where there are no new facts of a character to throw previous adjudication into serious doubt. American Graphophone Co. v. International Record Co. (C. C.) 155 Fed. 427; Ferry-Hallock Co. v. Herman, 178 Fed. 550, 101 C. C. A. 230. Imperial Machine & Foundry Corp. v. G. S. Blakeslee & Co. (C. C. A.) 262 Fed. 419; Witzel v. Butler Bros., 137 C. C. A. 517, 221 Fed. 947.

In the Imperial Machine, etc., Case, supra, the Circuit Court of Appeals went far in its effort to enforce the rights of owners of patents who had been successful in prior litigations, so that they might have the advantage of an injunction pendente lite, where there was no question of infringement. The District Court must follow this view as authority, and the view should be practically applied as matter of sound principle and good sense.

After all, as has been frequently observed, the question of invention is a question of fact. In the first case involving any given patent, the court usually hears experts, inter alios, and determines whether or not there is invention. Another case may arise involving the same patent but between different litigants. Other experts may express different views, and if the venue of the jurisdiction is different there may be a different result. In the same district, however, it would be obviously unfortunate if, on a motion of this kind, the court of original jurisdiction were to heed what in effect is a reargument based upon a different exposition by experts. Such a procedure and attitude would add to what is already the uncertainty of a patent suit and of the status of a patent. This uncertainty has subjected this branch of the law to doubt and criticism, and not without foundation. If an invention of practical value has been contributed to the knowledge of the world, the sooner it is put into practical use the better it is for the arts, sciences, and industries. Fundamentally under our system the value of a valid patent lies in its monopolistic control. If infringers can readily compete, it is, of course, obvious that the financial position of the owner of the patent and his licensees, who pay tribute, will be more or less impaired. If, then, the court shall on application for preliminary injunction reinvestigate validity with the same or substantially the same data before it as were considered in the case in which validity was adjudicated in the same jurisdiction, then a decree becomes largely a judicial abstraction, instead of a practical instrument for the protection of rights.

[3] In the case at bar it may be well to dispose at once of the question of laches. It is true that plaintiff permitted several years to go by before it began this suit; but the record discloses a very considerable amount of litigation until plaintiff was able to obtain the decisions of

the appellate court. Further, it must be remembered that defendant went into the business of manufacturing tungsten wire after and not before adjudication of the Just and Hanaman patent.

Whether the delay may affect the period and amount of the accounting is not now a question on this motion. Defendant entered into business, taking all the chances as to the ultimate results of the litigated career of the patents now in controversy, and this means that, at any time, defendant might be subjected to the hazard of immediate remedy against it by way of preliminary injunction.

Mosler v. Lurie, 209 Fed. 364, 126 C. C. A. 290, covers all that need be said in respect of granting an injunction, even though an accounting is denied. While Mosler v. Lurie had to do with final hearing, yet the facts and circumstances of the case at bar are such that it would be inequitable to deny plaintiff the relief prayed for on the ground of laches, in the event that the claims of the patent involved are valid and infringed.

With the foregoing introduction we may now consider these patents.

## Langmuir Patent.

[4, 5] Much of the record and argument are taken up with an attack upon the validity of this patent upon the theory that plaintiff's experts heretofore were wrong and that the court was thus led into error. I frankly decline as matter of law to consider this branch of resistance to the validity of the Langmuir patent. It must be remembered that the case passed beyond the District Court and was carefully and comprehensively considered by the Circuit Court of Appeals. The new defenses refer to Grove (1845), Gardiner and Blossom (1858), and criticize the previous presentation in respect of Hospitalier. Apparently there was an error made in regard to Hospitalier, but it was a matter of no importance as affecting the result. I see no occasion for any extended analysis of what defendant calls its new defenses. It is enough to say that I am of opinion that there is no merit in the present new defenses to the validity of the claims in issue. When one has finished reading all that has been set forth in this record in opposition to the Langmuir patent claims, it seems strange that no one between 1845–1858 and April 19, 1913, the date of the Langmuir application, came anywhere near pointing out how to construct the gas-filled lamp of Langmuir. It is also not necessary to discuss the question of infringement, in view of General Electric Co. v. Alexander (D. C.) 277 Fed. 290; Id. (C. C. A.) 280 Fed. 852.

## Just and Hanaman Patent.

[6] From what has been said heretofore, it follows that there is no occasion to discuss the views of the experts as to the errors made in the other litigations involving this patent. It is necessary only to refer to what defendant characterizes as its new defenses. So far as these defenses concern a further and, indeed, a very able analysis of the file wrapper, it must be assumed that both this court and the Circuit Court of Appeals in the previous litigations considered the file wrapper, which was there a part of the record.

[7] In the Laco-Philips Co. Case, this court stated that November 4, 1904, was the effective date of invention, but for present purposes it is necessary only to concentrate on the date of July 6, 1905, which was the date of the application of Just and Hanaman for the United States patent. Thereafter these applicants could have minimized, distinguished, or even attempted to repudiate the invention disclosed by their application. Obviously such declarations are immaterial. When the Patent Office deals with such an application, it is concerned with determining whether or not patentable invention is disclosed, and therefore whether or not letters patent should issue. Applicants may do anything they please in discussing their own application in other connections. The patent when issued represents, of course, a contract between the United States and the patentee. It seems elementary, in the absence of some kind of fraud which would vitiate the patent in an appropriate proceeding brought by the United States, that no statement of any kind or description can in any manner be relevant or material to the integrity of the contract or to its variation or destruction.

As above stated, for the purposes of this motion, the file wrapper must be deemed to have been fully considered by the Circuit Court of Appeals and by this court, and as a consequence it must follow that nothing was found in the file wrapper which, in the opinion of these courts, affected validity. Anything written or said after July 6, 1905, by these applicants elsewhere, in any other connection, must as matter of law be wholly disregarded.

In respect of Regnault, it is enough to refer to the discussion of Dr. Dushman at page 159 of plaintiff's reply affidavits. This very old reference is disposed of by that discussion. The note of Guichard in its consideration of the reaction discussed by Regnault in the case of molybdenum does not advance defendant's position and the article of Moissan and Williams in reference to a method of cementing molybdenum certainly did not teach the art how to make the tungsten lamp of Just and Hanaman.

It may be that, with the knowledge now possessed by the art, suggestions in these references together with views expressed by Blau and others, might be availed of to construct, as an after-developed thought or conclusion, something which might approach the Just and Hanaman tungsten lamp. The trite observation must again be repeated, that it is easy enough after a simple or difficult problem has been solved to tell how *now* to do what was heretofore unknown.

I have not discussed in detail the various questions raised and the points urged, for to attempt so to do would make this opinion as long as the briefs—a consummation devoutly not to be wished. I failed as a prophet when I said in General Electric v. Alexander, 277 Fed. 290:

"If, in view of prior litigations, it be ultimately held in this case that the claims of these patents are valid, it is difficult to imagine what new matter can later be brought forth."

I have, therefore, read this record with great care, and I must content myself with the observations, supra. There is, of course, no less infringement under this patent than there is under the Langmuir patent.

Of course, it will be understood that nothing here said is to be construed as fixing the scope of the final hearing. The extent or limits of that inquiry will be for the trial court to determine.

Motion for injunction pendente lite is granted. Settle order on three days' notice.