## GENERAL ELECTRIC CO. v. P. R. MALLORY & CO., Inc.

(District Court, S. D. New York. December 19, 1923.)

1. **Patents ⬤⟲327—Federal District Court in a patent case will not review decision of Circuit Court of Appeals as to same patent.**

    The federal District Court, in a patent infringement case, will not review the decision of the Circuit Court of Appeals on the same patent in another case.

2. **Courts ⬤⟲93(1)—Court should not reverse adjudications on faith of which business world has acted.**

    The court of first instance should not, in effect, reverse carefully considered adjudications on the faith of which the business world has acted, nor should it adopt a new expert approach, which in the main is no more nor less opinion evidence than was that of the experts in previous litigations.

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Patents ⚍328—1,180,159, claims 4, 5, 12, and 13, for electric light held valid.**
    Langmuir patent, No. 1,180,159, claims 4, 5, 12, and 13, for incandescent electric lamp having a tungsten filament, *held* valid and infringed.

4. **Patents ⚍240—Patentee does not lose benefit because idea improved.**
    An inventor, who discloses an idea in accordance with statutory requirements, does not lose the benefit of patent obtained merely because, after the idea has thus been given to the world, others, with the advantage of that knowledge, move the art still further forward.

5. **Patents ⚍328—Just & Hanaman patent, No. 1,018,502, held valid and infringed.**
    Just & Hanaman patent, No. 1,018,502, relating to tungsten lamps, *held* valid and infringed.

6. **Patents ⚍289—Lapse of several years held not to show laches, preventing accounting for infringement.**
    The fact that patentee permitted several years to elapse before it began a suit for infringement did not absolve defendant from an accounting; it appearing that defendant entered on its business after adjudication of plaintiff's patent.

In Equity. Suit by the General Electric Company against P. R. Mallory & Co., Inc. Decree for plaintiff.

Frederick P. Fish, of Boston, Mass., and Hubert Howson, of New York City (Albert G. Davis and Alexander D. Lunt, both of Schenectady, N. Y., of counsel), for plaintiff.

Duell, Warfield & Duell, of New York City (F. P. Warfield and L. A. Watson, both of New York City, of counsel), for defendant.

MAYER, Circuit Judge. [1] These patents have been much litigated, and it is unnecessary to repeat their history, so far as disclosed in opinions of this and other courts. Both patents have received the scrutiny of the Circuit Court of Appeals of this circuit, and there is no occasion to restate in detail what that court has decided. It may, however, be pointed out again, as it was in 286 Fed. 175, and 180, that this court will not review the Circuit Court of Appeals.

[2] Unless new facts appear, it is not for this court to say that a previous expert exposition, accepted by it and approved by the Circuit Court of Appeals, is wrong, because some new expert has another theory or explanation. If, therefore, there is infra a paucity of discussion of expert testimony, it is not because the court wishes to be understood as treating the experts cavalierly, but because the court of first instance should not, in effect, reverse carefully considered adjudications upon the faith of which the business world has acted, nor should the court adopt a new expert approach, which, in the main, is no more nor less opinion evidence than was that of the experts in the previous litigations.

The satisfactory order of discussion will be to take up, first the Langmuir patent, principally ,because it presents fewer incidents and questions than does the Just & Hanaman patent.

## 1. The Langmuir Patent.

The outstanding problem which the courts were called upon to solve in the so-called Nitro-Tungsten Case, 261 Fed. 606, affirmed 266 Fed.

994, was whether the correlation set forth in Langmuir's claims could be characterized as invention. After the Circuit Court of Appeals had held this patent valid and infringed, the next important question was whether thoriated tungsten filaments infringed, and this question was disposed of in favor of plaintiff in the so-called Alpha suit. 277 Fed. 290, affirmed 280 Fed. 852.

The defenses in the case at bar might be called synthetic defenses. Once an invention is disclosed to the world, skilled men can show how, if somebody previously had done this or that, the inventive result would have happened, and the device of the patent could have been built up. But the answer usually is that the prior art shows that the skilled men did not conquer the "ifs."

The new defense witness, Dr. Colin G. Fink, does not detract from, but adds to, the vigor of Langmuir's invention. A careful examination of his testimony shows that a man of excellent technical education, and presumably of substantial position in the field of electro-chemistry, with the broadest facilities for study and experiment at his command, did not succeed in solving the very problem so effectively worked out by Langmuir to a successful conclusion.

[3] Plaintiff is quite right in the assertion that Dr. Fink never grasped nor developed the idea that the filament must have a large diameter, and this was one of the fundamentals of the Langmuir invention. It is therefore again held that the Langmuir patent is valid, and that the same claims are infringed, as were so held in 261 Fed. 606, and 266 Fed. 994.

## 2. Just & Hanaman Patent.

(a) The date of invention is clearly November 4, 1904.

(b) After that, anything said by Just and/or Hanaman could not affect validity. This point was sufficiently discussed in the opinion on the motion for a preliminary injunction. 286 Fed. 175. This may be added: What protection would the purchaser of a patent or patent rights have, if he were charged with the duty of discovering what patentees said or did after the relevant date in respect of the merits of the invention, except in so far as disclosed in the particular file wrapper? A patentee, who, for instance, had some disagreement with a purchaser, would often have a dangerous weapon in his hands, if he himself or some one else could show that he was a fool or a knave, and thus attack the validity of a patent, in the absence of proof of fraud in obtaining the grant. Business men would have no security in their purchase and in the development of the patent for their own profit and the incidental public benefit.

(c) The Whitney-Beckwith defense. It is impracticable to set forth at length the details under this head. After examining both sets of briefs (sic), I find myself in substantial agreement with the arguments set forth in plaintiff's supplemental brief from pages 110 to 165. Dr. Whitney is concededly a very able man in his field. He was moving in the right direction when he wrote, "There is a chance that tungsten may be as useful as tantalum, but only a chance" (Record, p. 1704); but he never reached the point where he disclosed anything equivalent to the invention of the patent in suit. His application, filed October

1, 1904, sets forth what is plainly inoperative, and, in any event, is no proof of prior use.

So far as Beckwith is concerned, it is plain that he failed to make a ductile bar of tungsten. He then turned to squirted filaments. (It is apparent that Beckwith has made some errors as to dates—a not unusual circumstance in testimony which relates to events many years back. See Plaintiff's Supplemental Brief, pp. 139, 155). Nothing worth while was accomplished prior to November 4, 1904. But, even if the date of July 6, 1905, be taken, the result, on this evidence, will be the same; for the basic difficulty with Beckwith was that he did not know how to get the carbon out of his filament.

All the litigations, in this district and elsewhere, show many efforts, experiments, theories, and aspirations of men of high scientific attainments here and abroad to solve the problem, but there was always something missing prior to the Just & Hanaman patent here in suit. It is an argument based on human nature, although, of course, not at all controlling, that, if Whitney and Beckwith were really successful, it seems strange that plaintiff should have expended what was then a large sum to acquire the rights of those outside plaintiff's organization.

(d) In re Auergesellschaft. A great deal of testimony was taken in respect of the trip of Mr. Howell and Dr. Whitney, who went abroad in the spring of 1906 and, among other things, visited the factory of Auergesellschaft. This concern was then manufacturing the osmium lamp, but had an exhibit of several hundred operative tungsten lamps. Undoubtedly, both at the Auergesellschaft and at Augsburg, near Munich, in the factory of a Just & Hanaman licensee, Mr. Howell and Dr. Whitney learned a great deal in the way of practical manufacture. Up to this time plaintiff, with all its able experts and extensive experimental facilities, had failed. Always bearing in mind the relevant dates, it is difficult to see how this trip of Mr. Howel and Dr. Whitney, and their observations and the information obtained, are at all relevant to the controversy here.

Great advances have been made since November 4, 1904, the date of the Just & Hanaman British and French applications, and since July 6, 1905, the date of their United States application. Not the least of these advances is that contributed by the drawn wire filament of Coolidge. Blau also was a very able man and apparently contributed much to the development of the art in Germany; but his relevant date is February 11, 1907, the issue date of the German patent. Blau's earliest filing date was his German date of January 17, 1905, or January 18, 1905, which, in any event, was later than the Just & Hanaman date, November 4, 1904.

[4] From the foregoing it follows that the contention of plaintiff is quite sound, when it urges that whether plaintiff learned to make tungsten lamps from Blau or Coolidge or from both is of no importance as matter of law in this controversy. The lack of knowledge of plaintiff and its experts in 1906 cannot conceivably affect the validity of a previous patent. It may be further observed that it is an old story in the patent law and in the commercial development of patented inventions that the first patent may disclose an invention which needs much

improvement before it attains commercial value or importance; but it is a beneficent feature of the law, as illustrated in the telephone cases, that the inventor who discloses the idea in accordance with statutory requirements shall not lose the benefit of the patent merely because, after the idea has thus been given to the world, others with the advantage of that knowledge move the art still further forward.

[5] So, in the case at bar, we must always return to the Just & Hanaman date. We must think in terms of that date. We must ascertain whether what was then disclosed was invention over the prior art, with all the necessary elements of invention, including operativeness. If invention is found, what happened later is really of no importance as matter of law. Fully realizing the earnestness with which the validity of the Just & Hanaman patent has been attacked in this suit, I am of the opinion that it remains valid and infringed.

[6] In regard to laches, I need only add to what was said in 286 Fed. 175, that the circumstances do not deny to plaintiff an accounting against defendant. The fact that plaintiff in this case permitted several years to go by before it began this suit cannot be construed as absolving defendant from an accounting. If defendant had entered upon its business prior to the adjudication of the Just & Hanaman patent, a different question might have arisen, although I am not to be understood as·expressing any opinion on the point, because each case must be measured by its own facts. When, however, there is a clear adjudication of a patent and, after that, an infringing business is commenced and developed, the infringer, and not the patentee or his transferee, takes the chance of an accounting.

Plaintiff may have the usual decree, with costs.

### Addendum.

Plaintiff urges very strongly in its brief that there should be no suspension of injunction pending appeal. I realize that this case has been pending a considerable time for reasons well known to counsel. While the record is voluminous, defendants have produced witnesses and defenses, not presented in previous litigations and it is, perhaps, just as well that every fact which the industry and ability of counsel for defendants have been able to bring forward should be in this record. I have indicated in my opinion, supra, my conclusions and my conviction that plaintiff is entitled to a decree. There are nevertheless some questions which have not heretofore been before the Circuit Court of Appeals. In these circumstances, I shall grant a stay pending appeal upon the condition that the appeal must be ready for argument on the first Monday of March, 1924. Counsel are so familiar with the case that there should be no difficulty in preparing briefs, and I assume that the records are either already printed or can be printed in plenty of time. I shall be obliged if counsel will agree as to the other terms of the stay order.

Settle decree and order on five days' notice.