## GENERAL ELECTRIC CO. v. MINNE-APOLIS ELECTRIC LAMP CO.

(District Court, D. Minnesota, Fourth Division. October 9, 1924.)

1. Patents ⬤⟾297(3)—Preliminary injunction will be granted, where there has been prior adjudication sustaining patent and infringement thereof in same or another circuit.

Where there has been a prior adjudication sustaining patent, and infringement thereof in same or another circuit, validity of patent being contested on full proofs, trial court should, upon motion for preliminary injunction, sustain patent, and leave question of its validity to be determined upon final hearing.

2. Patents ⬤⟾297(7)—New matter, other than introduced in prior suits to sustain validity of patent, must be such as to lead court to believe patent would have been held invalid, in order to defeat preliminary injunction.

In order to defeat preliminary injunction, where patent has been sustained in same or another circuit, new matter relied upon must be of such character as to lead the court to believe that, had new matter been presented in former suit, patent would have been held invalid.

3. Patents ⬤⟾297(7)—French court's decision, holding patent invalid, can only raise doubt as to validity where patent was held valid in another circuit which had before it French court's decision.

Decision of the French court, holding invalid French patent covering same invention as United States patent in suit can only serve to raise doubt as to validity of French patent, and is not new matter which might affect the issuance of preliminary injunction, in view of fact that French court's decision was before other United States courts which sustained the French patent.

4. Patents ⬤⟾297(7)—New matter set up with old, insufficient to have changed prior decision sustaining patent, will not defeat issuance of preliminary injunction.

Where so-called new defenses are in reality old defenses, and new matter set up with old would hardly be sufficient to have changed prior decision sustaining patent, such new defenses, although entitled to full consideration upon final hearing, will not defeat issuance of preliminary injunction.

5. Patents ⬤⟾235—Retaining principle and mode of operation and attaining result by use of same or equivalent mechanical means constitutes infringement, notwithstanding form has been changed.

One may not escape infringement by adding to or substracting from a patented device, by changing its form or by making it more or less efficient, while he retains its principle and mode of operation, and attains its result by use of same or equivalent mechanical means.

6. Patents ⬤⟾328—1,018,502 and 1,180,159, claims 4, 5, 12, and 13, for incandescent lamp and bodies, held infringed.

Just and Hanaman patent, No. 1,018,502, for incandescent bodies for electric lamps, and Langmuir patent, No. 1,180,159, claims 4, 5, 12, and 13, for incandescent electric lamp, held infringed.

7. Monopolies ⬤⟾21—Violation of Anti-Trust Laws will not deprive right to maintain suit for infringement of patent.

Mere fact that party may be guilty of violating the Anti-Trust Laws (Comp. St. § 8820 et seq.) will not deprive him of his right to maintain a suit for injunction on account of infringement of patent owned by him.

8. Equity ⬤⟾65(3)—Maxim, "He who comes into equity must come with clean hands," applies only to case where the unconscionable conduct of the plaintiff is directly connected with the subject-matter of the suit.

Maxim, "He who comes into equity must come with clean hands," applies only to case where the unconscionable conduct of the plaintiff is directly connected with the subject-matter of the suit.

9. Patents ⬤⟾283(1)—Fact that patent owner had breached contract with defendant would not be defense to patent infringement suit.

Fact that owner of patent had breached contract with defendant would be no defense to patent infringement suit against defendant.

10. Patents ⬤⟾316—Defendant to patent infringement suit cannot compel plaintiff to perform contract which it had alleged was illegal and void.

Where counterclaim to patent infringement suit asks for relief that it be given right of purchasing from plaintiff according to contract, after having made allegation that sales made under such contracts were illegal and void, held that defendant had no valid cause of action to enforce such contract.

11. Patents ⬤⟾283(1)—Counterclaim to patent infringement suit, which is legal and not equitable, cannot be set up.

Under new equity rule 30, counterclaim to patent infringement suit, which is legal and not equitable, cannot be set up.

In Equity. Suit by the General Electric Company against the Minneapolis Electric Lamp Company for an injunction and accounting for infringement of patents. On motion for preliminary injunction, and on motion to strike out parts of answer. Pre-

liminary injunction granted, and motion to strike parts of answer granted.

Appeal dismissed 7 F.(2d) 1020.

Paul, Paul & Moore, of Minneapolis, Minn., Frederick P. Fish, of Boston, Mass., Hubert Howson, of New York City, Albert G. Davis, of Schenectady, N. Y., and H. A. Couse, of Cleveland, Ohio, for plaintiff.

Stanley S. Gillam, Rome G. Brown, and Whiteley & Ruckman, all of Minneapolis, Minn., for defendant.

BOOTH, District Judge. This is a suit for an injunction and for an accounting for damages and profits for infringement of two patents. The present hearing is upon a motion for a preliminary injunction, and has been heard upon bill and answer and a large number of affidavits and exhibits. The patents involved are United States patent No. 1,018,502, February 27, 1912 (application filed July 6, 1905), to General Electric Company for "incandescent bodies for electric lamps," known as the Just and Hanaman patent, and United States patent No. 1,180,159, April 18, 1916 (application filed April 19, 1913), to General Electric Company for "incandescent electric lamp," known as the Langmuir patent.

The claims of the Just and Hanaman patent are:

"1. A filament for incandescent lights, consisting of tungsten in a coherent metallic state and homogeneous throughout.

"2. A filament for incandescent lights, consisting throughout of substantially pure metallic tungsten of high fusing point and electrically conductive, the light-emitting properties of the filament being due to the coherent, homogeneous metallic nature of the tungsten.

"3. A filament for electric incandescent lights, comprising dense, coherent tungsten metal, having its fusing point approximately 3200° C. and capable of incandescent efficiency at the rate of less than one watt per candle power and substantially free from perceptible disintegration at that efficiency."

The relied upon claims of the Langmuir patent are:

"4. The combination of a lamp bulb, a filling therein of dry nitrogen at a pressure materially in excess of that corresponding to 50 millimeters of mercury and a filament of tungsten of large effective diameter, the filament being thereby adapted for operation at a temperature higher than that which it would have if operated in a vacuum at an efficiency of one watt per candle.

"5. An incandescent electric lamp having a filament of tungsten of large effective diameter and a bulb or globe therefor filled with dry nitrogen at a pressure as high or higher than that corresponding to 300 millimeters of mercury, the filament being thereby adapted for operation at a temperature higher than that which it would have if operated in a vacuum at an efficiency of one watt per candle."

"12. In an incandescent lamp, the combination of the lamp bulb, a tungsten filament therein, and a gaseous filling, the effective diameter of the filament being sufficiently large and the heat conductivity of the filling being sufficiently poor to permit the lamp to be operated with a filament temperature in excess of that of a vacuum tungsten lamp operating at an efficiency of one watt per candle and with a length of life not less than that of such a lamp.

"13. An incandescent electric lamp having a closely coiled tungsten filament, the coil giving the effect of a filament of large diameter, an inclosing bulb and a filling of gas having a materially poorer heat conductivity than hydrogen and at a pressure as high or higher than 300 millimeters of mercury, the filament being adapted for operation in said gaseous filling at a temperature higher than that which it would have if operated in a vacuum at an efficiency of one watt per candle."

Both patents have been repeatedly held valid—the Just and Hanaman patent in the Laco-Philips Case (C. C. A.) 233 F. 96; the Langmuir patent in the Nitro-Tungsten Case (D. C.) 261 F. 606, Continental Lamp Case (C. C. A.) 280 F. 846, the Incandescent Products Case (D. C.) 280 F. 856, the Brite-Lite Company Case (D. C.) 290 F. 967, the Nitrogen Electric Company Case (D. C.) 292 F. 384; and both patents, in the Alpha Case (D. C.) 277 F. 290, same case on appeal (C. C. A.) 280 F. 852, the Mallory-Save Cases (D. C.) 286 F. 175, Id. (D. C.) 294 F. 562, same cases on appeal (C. C. A.) 298 F. 579.

[1] The rule to be applied in reference to the issuance of a preliminary injunction in cases of this character, has been laid down in this circuit in the case of Fireball Co. v. Commercial Co., 198 F. 650, 653, 117 C. C. A. 354, 357, as follows:

"It is an incontrovertible rule of equity jurisprudence that where there has been a prior adjudication sustaining a patent and an infringement thereof in the same or another circuit, where the validity of the patent has been contested on full proofs, the Cir-

cuit Court should, upon a motion for a preliminary injunction, sustain the patent and leave the question of its validity to be determined upon the final hearing."

The same rule was adhered to in Wayne Co. v. Coffield Co., 209 F. 614, 126 C. C. A. 608. The same rule prevails in other circuits.

[2] It is contended, however, that there is an exception to the above rule, where in the later suit new matters are set up in defense. Conceding that such exception exists, yet it must be qualified by the condition that the new matter must be of such character as to lead the court in the later case to believe that, had the new matter been presented in the former suits, the patent would have been held invalid.

On the present hearing, most of the matters bearing on the question of validity of the patents, have been the same, in substance, as those which have been considered in prior suits. In the interest of economy of time, such matters will not be here discussed.

Turning to the alleged new defenses as outlined in the affidavit of counsel for defendant: One new matter to which attention is called is a decision by the French court, Civil Tribunal of the Seine, under date of June 1, 1923, holding invalid the French patent procured by Langmuir in France, December 20, 1913, No. 466,581, and covering, it is claimed, the same invention that is covered by the United States patent No. 1,180,-159.

This decision of the French court was based upon prior patents: Sinding-Larsen, Kellner, Letang, and Henry.

In reference to this decision and its effect upon the case at bar, it is to be noted:

First. That the French Langmuir patent is not before this court, and it cannot be assumed that it is identical with the Langmuir patent here in suit.

Second. The Kellner patent, on which the French decision is to some extent based, is not here in evidence before this court. Under these circumstances, this court is not in a position to properly evaluate the French decision.

Third. All of the patents, Sinding-Larsen, Kellner, Letang, and Henry, have been before the courts in connection with litigation respecting the Langmuir United States patent. Sinding-Larsen was before the court in the Alpha Case (D. C.) 277 F. 290, and in the Nitro-Tungsten Case (C. C. A.) 266 F. 994; the Kellner patent was considered in the Patent Office interference on the Just

and Hanaman, patent and was before the court in the Mallory and Save Cases (D. C.) 286 F. 175, 180; The Letang patent was before the court in the Incandescent Products Case (D. C.) 280 F. 856; the Henry patent was before the Circuit Court of Appeals in the Mallory and Save Cases, 298 F. 579— yet in all of these cases the Langmuir patent was sustained.

Fourth. The conclusion which it is sought to have this court draw from the French court decision, is that the French court is the only court thus far which has actually understood the Langmuir patent, and that all of the other courts which have passed upon it have failed to understand it.

Fifth. It further appears from the record, in the case at bar, that the French court decision was before the Court of Appeals of the Second Circuit, in the Mallory and Save Cases, and it must be assumed that the decision received due consideration.

[3] In view of the foregoing, I am unable to accord to the French court decision such decisive value, at this time, as defendant claims for it. At most, it can at present serve only to raise a doubt as to the validity of the Langmuir patent.

Some of the so-called new defenses are merely renewed and enlarged expositions of patents or other matters already considered by the courts in the prior suits. For example, the setting up of the German patent No. 154,262 to Just and Hanaman, which was considered in the Laco-Philips suit (C. C. A.) 233 F. 96, and in the Alpha suit (D. C.) 277 F. 290, and (C. C. A.) 280 F. 852; and the setting up of the British patent No. 20,277 to Siemens and Halske, which was considered in the Laco-Philips Case and in the Mallory and Save Cases (C. C. A.) 298 F. 579.

Another alleged new defense is that the construction placed upon the Just and Hanaman patent by the plaintiff makes it a patent for mere result. This contention was exploited in the Laco-Philips Case.

Another alleged new defense is based upon the Bottome patent, No. 408,286. This patent also was before the court in the Laco-Philips Case.

Another alleged new defense is that Just and Hanaman were not entitled to their French and British filing dates for priority purposes in this country, because they were citizens of Austria-Hungary, and that country was not a member of the "Convention" at that time. It appears from the record in this case, however, that this defense was pre-

sented to the Circuit Court of Appeals on petition for rehearing in the Alpha Case, and again on petition to the Supreme Court for a writ of certiorari in the same case.

Another alleged new defense is based upon evidence, said to be presented for the first time, "that the coiling of filaments in vacuum tungsten lamps was begun immediately upon the advent of drawn tungsten wire, and long before the filing of the Langmuir patent." This matter, however, was exploited in the Nitro-Tungsten Case.

[4] It is thus seen that all of these so-called new defenses are in reality old defenses, and, while some of them set up new matter along with old, yet I am not persuaded that, had such new matter been presented to the courts in the prior suits, the decisions would have been different. Though these alleged new defenses, as well as the other defenses, concededly old, are all entitled to full consideration upon the final hearing, yet that fact does not prevent the application of the above-quoted rule in regard to the issuance of preliminary injunctions in this class of suits.

### Infringement.

The evidence shows sales by the defendant of Save lamps which were held to be infringements in the Save suit.

The Melco lamps, No. 1129 and No. 81, which defendant makes and sells, are, according to the affidavit of Langmuir, "identical in structure, theory, and mode of operation with the lamps of the patents in suit."

Defendant seeks to differentiate its lamps, because of their short life. It is a matter of choice with defendant whether to have short life and high efficiency, or longer life and lower efficiency of its lamps. This is clearly shown by Langmuir in his affidavit. A change in the voltage used, or change in the length of the filaments used are not such differences as go to the principles and theory of the inventions of the patents in suit. Nor are they such differences as will avoid infringement.

[5] The use of the thoriated drawn tungsten wire as an avoidance of infringement was considered in the Alpha suit and in the Mallory and Save suits. It was held that the use of thoria was for purely mechanical reasons. The evidence on the present hearing appears to support such holding. The rule laid down in Lourie Implement Co. v. Lenhart, 130 F. 122, 129, 64 C. C. A. 456, 463, is applicable:

"One may not escape infringement by adding to or subtracting from a patented device, by changing its form, or by making it more or less efficient, while he retains its principle and mode of operation, and attains its result by the use of the same or of equivalent mechanical means. Walker on Patents, §§ 347, 348; Sewall v. Jones, 91 U. S. 171, 183, 23 L. Ed. 275; Coupe v. Weatherhead (C. C.), 16 F. 673, 675."

[6] Without discussing the matter in further detail, it is sufficient to say that on the present record infringement is in my judgment clearly established, of the claims of the Just and Hanaman patent and of claims 4, 5, 12 and 13 of the Langmuir patent.

The defense that the plaintiff has condoned what it now claims to be an infringement, by the sale of lamp bases to the defendant, was considered and disposed of adversely in the Continental Lamp Works Case (C. C. A.) 280 F. 846.

The motion for preliminary injunction is granted. The form of the order, if not agreed upon by the parties, may be settled on five days' notice.

### Motion To Strike Parts of Defendant's Answer.

At the hearing on the motion for preliminary injunction a motion was also made by plaintiff to strike out divisions III, V, VI, and VIII of defendant's answer. The ground alleged for the motion is that the facts set forth in said divisions, respectively, do not constitute a defense to the complaint, and that the facts set forth in division VIII do not constitute a counterclaim cognizable in equity.

These divisions of the answer set up, in substance, that plaintiff has been guilty of violating the Anti-Trust Laws of the United States (Comp. St. § 8820 et seq.); that it is engaged in a conspiracy to monopolize the entire business of the manufacture and sale of electric lamps; that as a part of said conspiracy it has engaged in efforts to destroy defendant's business by refusing to sell lamps to defendant, and by canceling a contract once existing between them.

[7] It is well settled that the mere fact that a party may be guilty of violating the Anti-Trust Laws will not deprive him of his right to maintain a suit for injunction on account of infringement of a patent owned by him. Brown Saddle Co. v. Troxel (C. C.) 98 F. 620; Virtue v. Creamery Package Mfg. Co., 179 F. 115, 102 C. C. A. 413.

[8] The maxim, "He who comes into equity must come with clean hands," applies only to cases where the unconscionable conduct

of the plaintiff is directly connected with the subject-matter of the suit. The maxim does not mean that the general conduct of a plaintiff must have been above reproach, nor even that the plaintiff's conduct towards the defendant as to other matters must have been fair and equitable. Langley v. Devlin, 95 Wash. 171, 163 P 395, 4 A. L. R. 32, note, 44, 65; Talbot v. Independent Order of Owls, 220 F. 660, 136 C. C. A. 268; Bentley v. Tibbals, 223 F. 247, 138 C. C. A. 489; Trice v. Comstock, 121 F. 620, 628, 57 C. C. A. 646, 61 L. R. A. 176; American Sugar Refining Co. v. McFarland (D. C.) 229 F. 284.

[9] If plaintiff has been guilty of violating the laws of the United States, there are remedies which may be pursued by the proper parties in interest. If plaintiff has committed breach of a contract with defendant, whether of agency or sale, or has wrongfully canceled such a contract with defendant, or committed a tort against defendant, remedies exist which are available for the defendant; but none of such acts of the plaintiff, even if they were committed, are so directly connected with the plaintiff's right, which it is now seeking to protect and enforce in the instant suit, as to make applicable the above quoted maxim.

Division VIII of the answer sets up also a counterclaim. As a pleading, this counterclaim can hardly be called artistic. It gathers together by reference all of the preceding divisions of the answer, and makes them part of the counterclaim. It then adds two new paragraphs and a prayer for relief.

There is thus thrown into this counterclaim, a great mass of allegations which has no proper place in the cause of action which the defendant is apparently trying to set up. Part of the prayer for relief would indicate that this cause of action is equitable; another part would indicate a legal cause of action.

After considerable study, I have reached the conclusion that, if any cause of action can be spelled out of the counterclaim, it is one which is legal in its nature; one growing out of an alleged breach, or out of an alleged cancellation of a contract formerly existing between the parties.

No contractual relations are alleged to exist between plaintiff and defendant at the present time, so that no specific performance can properly be prayed for. The contract, which it is claimed was wrongfully canceled, would have expired by its terms long before the commencement of this suit.

Though it is possible for a cause of action for an injunction to arise in favor of an individual against a violator of the Anti-Trust Act, as amended by the Clayton Act (Comp. St. § 8835a et seq.) (see General Investment Co. v. Lake Shore Railway, 260 U. S. 261, 287, 43 S. Ct. 106, 67 L. Ed. 244), yet the allegations in the defendant's counterclaim in the instant case are not sufficient to constitute such an equitable cause of action.

Apart from the alleged breach of contract and the alleged cancellation of contract, the whole grievance set forth in the counterclaim seems to be that defendant is being deprived, by plaintiff, of the opportunity of selling the lamps manufactured by plaintiff, which plaintiff claims are covered by the patents in suit; and that this deprivation has been brought about by plaintiff's refusal to have further business relations with defendant relative to the sale of such lamps.

But no facts are set forth showing that defendant has the right to force plaintiff into such business relations; on the contrary, the allegations of the counterclaim, assuming them to be true, show that defendant is not entitled to the equitable relief asked, to wit: (1) That plaintiff be enjoined "from refusing to sell electric lamps to defendant upon the same terms and conditions as it sells to any other dealer or agent; (2) that plaintiff be enjoined "from refusing to grant to defendant a license upon proper and lawful terms and conditions to use said patents herein in suit, in case the same are herein found to be valid."

As to the first prayer for relief, it is to be noted that defendant has alleged in its counterclaim that plaintiff is in reality making sales of its lamps to dealers through its so-called "agency contracts," and that these agency contracts are illegal and void; yet defendant asks as relief that it be given the right of purchasing from plaintiff on the same (illegal) terms and conditions as other so-called agents.

[10] Defendant can have no valid cause of action to compel plaintiff to make with it an illegal and void contract, even though plaintiff has heretofore made many such contracts with other people.

The allegations of the counterclaim, assuming them to be true, also show that defendant is not entitled to the second equitable relief prayed for.

It is alleged at great length in the counterclaim that both the Just and Hanaman patent and the Langmuir patent are illegal and void; if this be true, no license is neces-

sary, and certainly defendant would not be entitled to a license from plaintiff under void patents. Nor is the defendant entitled to this equitable relief asked in its counterclaim, even though the patents are valid; for, if the patents are valid, plaintiff has by virtue of them a lawful monopoly, and the court would not be authorized by virtue of anything alleged in the counterclaim, nor by virtue of the Anti-Trust Statute or the Clayton Act, to decree who should be plaintiff's licensee under its patents, much less to fix the terms of such license.

The allegations of the counterclaim, in my judgment, wholly fail to make a case for the injunctive relief asked in favor of the defendant.

[11] If any cause of action is stated in the counterclaim, it is in my judgment legal and not equitable. Such being the character of the counterclaim, it cannot be set up in the present suit under either of the branches of new equity rule 30 which relate to counterclaims. See American Mills Co. v American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306.

Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232, is not to the contrary. That case simply holds that an equitable defense may be set up to a legal cause of action, by virtue of section 274b, Judicial Code (Comp. St. § 1251b); and that the effect of such pleading may be to convert the suit from one at law to one in equity.

Motion to strike divisions III, V, VI, and VIII of the answer is granted.