## DESMOND INCANDESCENT LAMP CO. et al. v. GENERAL ELECTRIC CO.

Circuit Court of Appeals, Third Circuit.
July 16, 1928.

No. 3514.

1. Patents ⚖️303—On motion for preliminary injunction, palpable infringement is one consideration that may properly sway mind of judge.

On motion for preliminary injunction in patent infringement suit involving patents which have been sustained by prior adjudication, one consideration that may properly sway mind of judge is that of palpable infringement.

2. Patents ⚖️303—Plaintiff in patent infringement suit, seeking preliminary injunction, must prove infringement sufficiently to sway mind of judge.

Plaintiff in suit for patent infringement must, on motion for preliminary injunction, prove infringement, not conclusively, but sufficiently to sway mind of judge in exercise of his discretion in granting such injunction, without aid from controverting evidence produced by defendants.

3. Patents ⚖️303—Evidence held to make prima facie case of infringement of No. 1,018,-502, for tungsten filament for incandescent lamps, and No. 1,180,159, for incandescent lamp bulb having tungsten filament, warranting preliminary injunction.

In suit for infringement of Just and Hanaman patent, No. 1,018,502, covering a substantially pure tungsten filament for incandescent lamps, and Langmuir patent, No. 1,180,159, for incandescent lamp bulb having a tungsten filament enveloped by an atmosphere of inert gas, evidence that filaments of defendants' lamp were substantially pure tungsten *held* sufficient to make a prima facie case of infringement, justifying judge in exercise of his discretion to grant preliminary injunction.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Patent infringement suit by the General Electric Company against the Desmond Incandescent Lamp Company and others. From a decree granting plaintiff a preliminary injunction, defendants appeal. Affirmed.

Charles J. Holland, of New York City, for appellants.

Howson & Howson, of New York City (Hubert Howson, of New York City, Albert G. Davis, of Schenectady, N. Y., and Frederick P. Fish, of Boston, Mass., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The General Electric Company brought this suit against the Desmond Incandescent Lamp Company and certain interested and active persons for infringement of five letters patent having to do with the manufacture of incandescent lamps. At the outset the plaintiff moved for a preliminary injunction which the District Court granted on a showing that each of two patents in suit—the Just and Hanaman patent No. 1,018,502, covering a substantially pure tungsten filament for incandescent lamps, and the Langmuir patent No. 1,180,159 for an incandescent lamp bulb having a tungsten filament enveloped by an atmosphere of inert gas—had three times been sustained by the District Court of the United States for the Southern District of New York and each time its decree had been affirmed by the Circuit Court of Appeals for the Second Circuit, and in addition, that the Langmuir patent had been sustained by District Courts in New Jersey, Rhode Island and Minnesota (General Electric Co. v. Nitro-Tungsten Lamp Co. [D. C.] 261 F. 606, affirmed [C. C. A.] 266 F. 994; General Electric Co. v. Alexander [D. C.] 277 F. 290, affirmed [C. C. A.] 280 F. 852; Alexander v. General Electric Co., 260 U. S. 727, 43 S. Ct. 89, 67 L. Ed. 484; General Electric Co. v. Laco-Philips Co. [C. C. A.] 233 F. 96; General Electric Co. v. Continental Lamp Works [C. C. A.] 280 F. 846; General Elec-

tric Co. v. Incandescent Products [D. C.] 280 F. 856; General Electric Co. v. Save Electric Corporation [D. C.] 286 F. 180; General Electric Co. v. Nitrogen Electric Co. [D. C.] 292 F. 384; General Electric Co. v. Brite-Lite Lamp Co., Inc. [D. C.] 290 F. 967; General Electric Co. v. P. R. Mallory & Co. [D. C.] 294 F. 562; General Electric Co. v. Save Electric Corporation [D. C.] 294 F. 567, affirmed [C. C. A.] 298 F. 579; General Electric Co. v. Minneapolis Electric Lamp Co. [D. C.] 10 F.[2d] 851), and by the British House of Lords, Reports of Patent, Design and Trade-Mark Cases, vol. 39, p. 49, and on a showing of infringement by supporting affidavits which it regarded as sufficient.

On representations made by the defendants to a Circuit Judge in chambers that the plaintiff's proofs of infringement were based on technically improper tests and generally on false premises which they, the defendants, could not in the limited time before the preliminary hearing meet and that they desired time to controvert the evidence on which the injunction had been awarded and an opportunity to save themselves from irreparable injury, the circuit judge suspended the preliminary injunction temporarily. Whereupon the defendants filed additional affidavits and promptly appealed from the decree awarding the preliminary injunction. In this state of the record the case came on for hearing before this court. The defendants, though orally questioning the validity of the patents named in the decree, stated in their briefs that the only question involved is whether or not the filament of the defendants' lamp is tungsten, that is, whether or not the defendants infringed.

[1] We think the question should be stated in a different way so that it may conform to the primary question always present in an appeal from a decree awarding a preliminary injunction and that is whether the learned District Judge abused the discretion which in such cases is reposed in him. This court has from time to time expressed itself on the power of a District Judge to grant preliminary injunctions in patent cases and the proper conduct of this appellate court in reviewing his action, Philadelphia Co. v. Edison Electric Co. (C. C. A.) 65 F. 551; Cohen v. Stephenson (C. C. A.) 143 F. 467; Grushlaw v. Phœnix Knitting Works (C. C. A.) 183 F. 222; Wallerstein v. Feigenspan (C. C. A.) 215 F. 919; one of the considerations that may properly sway the mind of the judge on a motion for preliminary injunction being that of palpable infringement made more controlling when the infringement is of patents which, as here, have been sustained by prior adjudications, Rousso v. Barber (C. C. A.) 276 F. 552; Elite Pottery Co. v. Dececo Co. (C. C. A.) 150 F. 581; American Fur Co. v. Cimiotti Unhairing Co. (C. C. A.) 118 F. 838. We shall, therefore, in reviewing the decree here on appeal assume, on authority of the cited decisions, the validity of the claims of the patents named in the preliminary injunction and address our consideration solely to the question whether the learned trial judge properly exercised his discretion or abused his discretion according as the evidence is or is not of the character required to sustain the injunction.

As the Just and Hanaman patent covers a substantially pure tungsten filament and as the claims of the Langmuir patent here involved cover a tungsten filament in a gaseous atmosphere, and as both patents relate to incandescent lamps, the question whether the evidence is sufficient to sustain the injunctive decree may be further compressed by inquiring whether or not the filaments of the Desmond Company lamps were substantially pure tungsten.

The defendants were making two types of lamps, "No. 81 Dilco" and "No. 1129 Dilco." These numbers, 81 and 1129, are standard arbitrary numbers which the plaintiff long ago adopted to designate respectively the small vacuum bulb tungsten lamp, embodying the inventions of the patents, which is used on practically every gas filled tungsten filament automobile headlight. The plaintiff says that the defendants not only copied these lamps but in addition appropriated its type numbers, and that the lamps are identical in all respects with those enjoined in General Electric Co. v. Minneapolis Electric Lamp Co. (D. C.) 10 F.(2d) 851, and, except that the bulbs are smaller and the filaments shorter, are identical with the lamp enjoined in General Electric Co. v. P. R. Mallory & Co. (D. C.) 294 F. 562, 567, and General Electric Co. v. Alexander and Alpha Laboratories (D. C.) 277 F. 290, and that both lamps infringe the Just and Hanaman patent and the 1129 lamp also infringes claims of the Langmuir patent.

The extraordinary and unique properties of a tungsten filament are set forth at length in General Electric Co. v. Laco-Philips Co. (C. C. A.) 233 F. 96, which briefly stated are: (1) Its very high melting point, given in the patent as 3200° C., and according to testimony of experts even reaches 3400° C.; (2) its property of remaining unaltered

in a vacuum of such high temperature as distinguished from the property of other metals to disintegrate or evaporate in such excessive heat; and (3) its electrical resistance which increases very rapidly with increase of temperature, a matter of particular importance in automobile lamps which are subject to fluctuating voltage. Whether a given metal is tungsten may with fair certainty be determined by looking for and finding these characteristic properties, all of which, it is clearly proved, are present in the defendants' filaments. But whether or not a given metal is tungsten may perhaps be more accurately determined by three separate tests conceived and practiced by the art. One is the melting point test. By supporting affidavits of scientists and inventors occupying high stations in the art, the plaintiff established in its prima facie case that the filaments of the defendants' lamps were found to have a melting point of about 3400° C., which is approximately the melting point of tungsten according to the best and most recent measurements. One affiant stated that the "filament was in fact a filament of substantially pure tungsten is fully established by this observed value of the melting point." Another stated that: "By this one test of melting point alone it would be possible to determine that this material is tungsten, because there is no other known metal which melts at this temperature; and that no other metal except carbon has a melting point anywhere near as high." The melting point of osmium is given at 2700°, and of tantalum at 2900°. Aside from what may be the precise melting point of tungsten, the important evidence is that the defendants' filaments and tungsten melt at the same temperature, which, though not conclusive, is a persuasive argument that they are the same metal. The affiant stated, not as an opinion but as a fact, that the filaments of the defendants' two types of lamps are substantially pure coherent metallic tungsten, dense and homogeneous. The defendants attack this test first on the contention that the affiant Fonda did not make it himself. This can not be sustained because the language of the affidavit clearly indicates that if he did not make the test alone he participated in it and thereby was enabled to testify of his own knowledge in respect to it. The defendants next say that if Fonda made the test, it was not sufficient because scientists have reached no general agreement as to the precise melting point of tungsten. We think the defendants have not demonstrated the impracticability of the test or controverted its outcome.

The plaintiff's second test was that of the hot-to-cold resistance ratio which is the ratio between the electrical resistance at some standard running temperature (taken at 2130° C.) and "room temperature" (taken at 25° C.). The electrical resistance of tungsten increases as the temperature is raised, and the rate at which this increase takes place and the amount of the increase between the limits mentioned is a delicate test of the nature and purity of the metal. It was testified that there is only one other metal, namely, molybdenum, which has a hot-to-cold resistance ratio so near to that of tungsten that one may be mistaken for the other by this test. The defendants do not claim that their filaments were made of molybdenum. This hot-to-cold resistance test showed according to the plaintiff's affidavits that they were made of tungsten.

The defendants, although they hold themselves out by their advertisements as "Manufacturers of All Types of Miniature Carbon and Tungsten Incandescent Lamps," deny that the filaments of the alleged infringing lamps were tungsten and deny that the hot-to-cold test proved that they were tungsten, and generally challenge the sufficiency of such a test by propounding to the affiant certain questions as to the technique of the test which he did not answer in the interchange of affidavits. They argue therefore that no such test was made, or, if made, it does not appear it was properly made, or even if properly made it would not establish the fact of tungsten. We find against the defendants on these contentions.

The remaining test of the defendants' filaments which the plaintiff made was a chemical test, qualitative and quantitative. This, according to the plaintiff's affidavits, disclosed that the defendants' filaments were tungsten. Here again the fact of such test ever having been made is challenged, or, if made, its probative force, in the absence of technical particulars, is assailed.

[2, 3] Of course, having charged the tort of infringement the plaintiff must prove it, not conclusively as on final hearing but sufficiently on preliminary hearing to sway the mind of the judge in the exercise of his discretion in granting a preliminary injunction. And this the plaintiff must do wholly without aid from the controverting evidence produced by the defendants, who, of course, may stand mute if they choose. And so here, while the defendants denied that their filaments were tungsten, they did not at the hearing on the motion disclose the material of which they were made but relied on the claimed infirmities in the plaintiff's tests

and informalities in its proofs. At the hearing on appeal however, they did name the metal of which they claim to have made their filaments, which, as we understood them, is something of a trade secret and will not be repeated here. It will be enough to say they represented that it was not tungsten. Yet, even so, the evidence is presently convincing that the defendants' claim that their filaments were of a metal other than tungsten related to filaments made' after the decree for a preliminary injunction and not to the filaments charged to be infringements. All this however may be developed on final hearing. Grushlaw v. Phœnix Knitting Works (C. C. A.) 183 F. 222. Taking the plaintiff's testimony alone, or taking its testimony and that of the defendants together, we are satisfied that a prima facie case of infringement was made strong enough to justify the judge, in the exercise of his discretion, to grant the preliminary injunction prayed for and later embodied in the decree here under review and now affirmed.